Joe LA BUHN, Plaintiff,

v.

**BULKMATIC TRANSPORT CO., Defendant.**

No. 86 C 3474.

United States District Court,
N.D. Illinois, E.D.

Sept. 30, 1986.

L. Steven Platt, Arnold and Kadjan, Chicago, Ill., for plaintiff.

Lawrence C. DiNardo, James P. Osick, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Joe La Buhn ("La Buhn") initially sued Bulkmatic Transport Company ("Bulkmatic") in the Circuit Court of Cook County, Illinois, claiming Bulkmatic had fired him in retaliation for (1) his complaints about unsafe working conditions and (2) his successful exercise of a contractually guaranteed right to grieve an earlier discharge. Bulkmatic promptly removed the action to this District Court on the ground La Buhn's claim necessarily arose under (and was preempted by) Labor Management Relations Act § 301 ("Section 301"), 29 U.S.C. § 185.

Now Bulkmatic has moved for dismissal under Fed.R.Civ.P. ("Rules") 12(b)(6) and

12(b)(1).[1] For the reasons stated in this memorandum opinion and order, La Buhn's claims are dismissed—one of them (the safety-related claim) without prejudice.

## Facts [2]

La Buhn drove one of Bulkmatic's trucks (¶ 1). On September 24, 1983 he delivered a load of anhydrous sodium metasilicate ("Silicate Soda") to Overdale, one of Bulkmatic's customers (¶ 2). Though he observed appropriate safety precautions, he was exposed to Silicate Soda dust during the unloading process and became ill (¶¶ 5–6). That exposure was caused by (1) a defect in Bulkmatic's truck and (2) unsafe conditions at Overdale's receiving facility (¶¶ 7–8). La Buhn complained about the unsafe situation, and Bulkmatic took him off the Overdale route (¶ 9).

On August 30, 1984 Bulkmatic reassigned La Buhn to Overdale deliveries (¶ 10). After another exposure to Silicate Soda dust, La Buhn lodged a second complaint about Overdale's unsafe conditions, but Bulkmatic kept him on the route (¶¶ 11–12). Bulkmatic also sent La Buhn to make Silicate Soda deliveries to two other customers where unsafe conditions existed, and La Buhn was again exposed to harmful dust (¶¶ 13–14, 16–17). When he complained about each of those places, Bulkmatic was similarly unresponsive (¶¶ 15, 18). Nor did Bulkmatic take any steps to address La Buhn's general complaints about the lack of safety precautions afforded him and his fellow drivers (¶ 19).

Bulkmatic fired La Buhn in February 1985—La Buhn says that was in retaliation for his complaints (¶ 20). However, he was reinstated by a union grievance panel (*id.*). Bulkmatic fired La Buhn again in February 1986, and that termination was upheld by the union grievance panel (*id.*; Removal Petition ¶ 2(f)).

La Buhn then sued in the state court, claiming (¶ 22):

Defendant's acts in terminating Plaintiff in retaliation for complaining about the unsafe conditions then and there existing with regard to the loading and unloading of a dangerous chemical, namely silicate soda, or alternatively, for exercising his contractually guaranteed right to grieve his discharge in February, 1985 were intentional and wilful.

According to Removal Petition ¶ 2 La Buhn omitted several facts from his Complaint:

1. Bulkmatic is an employer in an industry affecting commerce.

2. La Buhn was a member of International Brotherhood of Teamsters Local Union No. 705 ("Union").

3. Bulkmatic and Union were parties to a collective bargaining agreement ("CBA"),[3] which governed the terms and conditions of La Buhn's employment.

4. Under the CBA, arbitration was the mandatory and exclusive grievance procedure for employee challenges to Bulkmatic's disciplinary actions.

## Opposing Contentions of the Parties

Bulkmatic presents alternative grounds for dismissal:

1. La Buhn's attempt to state an action for retaliatory discharge under Illi-

---

**1.** Although Bulkmatic's motion refers only generally to "Rule 12," its alternative grounds for dismissal fall within the two subdivisions of that Rule cited in the text.

**2.** Rule 12(b)(6) principles require this Court to accept as true the Complaint's well-pleaded factual allegations, drawing all reasonable inferences in La Buhn's favor (all citations to the Complaint will simply take the form "¶ —"). *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985). Because Bulkmatic has invoked the "artful pleading" doctrine, however, this Court may also look to Bulkmatic's removal petition to determine whether La Buhn "has artfully omitted pleading facts essential to show

the federal nature of [his] claim" (*Oglesby v. RCA Corp.,* 752 F.2d 272, 278 (7th Cir.1985)). Further, to the extent resolution of the issues turns on the question of subject-matter jurisdiction, this Court may consider matter submitted outside the pleadings without transforming Bulkmatic's motion into one for summary judgment (*Crawford v. United States,* 796 F.2d 924, 927 (7th Cir.1986)). In any event there are no material factual disputes.

**3.** Although the Removal Petition did not contain a copy of the CBA, both sides have tendered it with their current briefing.

nois law is defeated by Section 301's preemptive effect. Thus:

(a) La Buhn's action was properly removed to this District Court, for it arises under federal law.

(b) La Buhn has failed to state a claim under Section 301, for his exclusive CBA remedy is the arbitral grievance procedure, in which his requested relief has already been denied.

(c) La Buhn can state no direct Section 301 claim against Bulkmatic, for he has not charged Union breached its duty of fair representation.

2. Bulkmatic's action toward La Buhn was (if anything) an unfair labor practice under National Labor Relations Act §§ 7 and 8 ("Sections 7 and 8"), 29 U.S.C. §§ 157 and 158. Such claims are within the NLRB's exclusive primary jurisdiction.

For his part La Buhn urges this action was improperly removed and should be remanded to state court because, he says:

1. Illinois' retaliatory-discharge tort is independent of the CBA and is thus not preempted by Section 301, so this action does not arise under federal law.

2. Nothing charged in the Complaint amounts to an unfair labor practice within NLRB's primary jurisdiction.

As to his Section 301 argument, La Buhn says nothing about (1) the preclusive effect of the CBA grievance procedure or (2) the absence of a duty-of-fair-representation claim. He stakes his whole fate on his argument that removal was improper.

### Section 301 Preemption

Under 28 U.S.C. § 1441(a) ("Section 1441(a)") a state-court defendant may remove to federal district court:

any civil action ... of which the district courts of the United States have original jurisdiction....

Absent diversity of citizenship between the parties (none is alleged here), that means a removable action must state a federal-question claim. La Buhn's state-court Complaint says nothing about a claim "arising under the Constitution, laws, or treaties of

the United States"—28 U.S.C. § 1331's definition of a federal question.

■ Under well-established jurisdictional principles (*Orsini v. Echlin, Inc.*, 637 F.Supp. 38, 39 (N.D.Ill.1986), adapted to this case):

1. [La Buhn] is master of [his] own claim for purposes of determining federal jurisdiction. *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913).

2. [Bulkmatic] thus cannot rely on its potential federal-law *defense* as a basis for removal. *Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 461–62, 464, 14 S.Ct. 654, 656–57, 658, 38 L.Ed. 511 (1894)....

But it is equally fundamental that a state-court plaintiff cannot defeat defendant's Section 1441(a) removal right "by omitting to plead necessary Federal questions in a complaint ..." (*Franchise Tax Board of California v. Construction Laborers Vacation Trust of Southern California*, 463 U.S. 1, 22, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983)). In that sense "necessary" federal questions exist where federal law has wholly preempted any possible state-law cause of action, making plaintiff's suit one arising under federal law willy-nilly (*id.* 23, 103 S.Ct. 2853; *Graf v. Elgin, Joliet & Eastern Railway Co.*, 790 F.2d 1341, 1345 (7th Cir.1986)). Consequently if La Buhn's retaliatory discharge suit states a cause of action preempted by Section 301, it was a suit "of which the district courts of the United States have original jurisdiction" and was properly removed.

Section 301 has created a fertile field for preemption arguments. As *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985) (footnote omitted) said:

Section 301 of the LMRA states:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the par-

ties...." 29 U.S.C. § 185(a). In *Textile Workers v. Lincoln Mills*, 353 US. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), the Court ruled that § 301 expresses a federal policy that the substantive law to apply in § 301 cases "is federal law, which the courts must fashion from the policy of our national labor laws." *Id.*, at 456, 77 S.Ct., at 918. That seminal case understood § 301 as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts.

The pre-emptive effect of § 301 was first analyzed in *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962), where the Court stated that the "dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute [so that] issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy." The Court concluded "that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Id.*, at 104, 82 S.Ct., at 577.

\* \* \* \* \* \*

For those reasons the Court in *Lucas Flour* held that a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law. A state rule that purports to define the meaning or scope of a term in a contract suit therefore is preempted by federal labor law.

*Lueck*, 105 S.Ct. at 1911–12 (footnotes omitted) went on to shape the scope of Section 301's preemptive force:

Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law. Section 301 on its face says nothing about the substance of what private parties may agree to in a labor contract.

Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

Therefore, state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements. Cf. *Malone v. White Motor Corp.*, 435 U.S. [497,] 504–505, 98 S.Ct. [1185,] 1189–1190 [55 L.Ed.2d 443] [(1978)] (NLRA pre-emption). Our analysis must focus, then, on whether the Wisconsin tort action for breach of the duty of good faith as applied here confers non-negotiable state law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted.

In *Orsini*, 637 F.Supp. at 40 this Court held Illinois' retaliatory-discharge tort, as established in *Midgett v. Sackett-Chicago, Inc.*, 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984) *did* exist "independently of private agreements" and was therefore not preempted by Section 301. *Midgett*, 105 Ill.2d at 150–51, 85 Ill.Dec. at 479, 473 N.E.2d at 1284 found "an important public

interest" in preventing discharges in retaliation for the exercise of rights under the Illinois Workers' Compensation Act (the "Compensation Act"), Ill.Rev.Stat. ch. 48, ¶¶ 138.1 to 138.30. That interest required recognition of a retaliatory-discharge tort whether or not a CBA was in the picture. In *Lueck* terms, that interest "can[not] be waived or altered by agreement of private parties...."[4]

Bulkmatic urges *Orsini* is not dispositive as to La Buhn's retaliatory-discharge claim for two reasons:

1. *Koehler v. Illinois Central Gulf Railroad Co.*, 109 Ill.2d 473, 94 Ill.Dec. 543, 488 N.E.2d 542 (1986) materially limits *Midgett.*

2. La Buhn does not claim he was fired in retaliation for filing a Compensation Act claim and has not claimed Bulkmatic violated a clearly articulated state policy.

Neither argument undercuts *Orsini*'s potential applicability to one (though not to both) of La Buhn's claims here.

First, it is true *Koehler* said the Railway Labor Act ("RLA," 45 U.S.C. §§ 151 to 163) *does* preempt an action alleging plaintiff was fired in retaliation for filing an FELA claim. Though in many ways the preemptive effect of RLA is comparable to that under Section 301 (see *Graf*, 790 F.2d at 1345–46), *Koehler*, 109 Ill.2d at 479–80, 94 Ill.Dec. at 546–47, 488 N.E.2d at 545–46

rested its decision on RLA's "elaborate and extensive administrative scheme" for adjusting railroad-industry employment disputes—a scheme totally independent of CBA terms. Thus, while Section 301 preempts only those labor disputes "arising out of labor contracts" (*Lueck*, 105 S.Ct. at 1910), by contrast *Koehler*, 109 Ill.2d at 480, 94 Ill.Dec. at 547, 488 N.E.2d at 546 said RLA preempts *all* "employment-based disputes between parties covered by the RLA...." Clearly that makes *Koehler* irrelevant here, for nothing *Koehler* said cast doubt upon *Midgett* outside the RLA context.[5]

Second, Bulkmatic is also correct in saying *Midgett* involved a particular kind of retaliation (firing an employee for filing a Compensation Act claim) not present here. But that is not the touchstone of an Illinois retaliatory-discharge claim. As *Price v. Carmack Datsun, Inc.*, 109 Ill.2d 65, 67–68, 92 Ill.Dec. 548, 549–50, 485 N.E.2d 359, 360–61 (1985) said:

A cause of action for retaliatory discharge is recognized by this court only when the employee's discharge is in violation of a "clearly mandated public policy." (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill.2d 520, 525, 88 Ill.Dec. 628, 478 N.E.2d 1354; *Palmateer v. International Harvester Co.* (1981), 85 Ill.2d 124, 128–30, 52 Ill.Dec. 13, 421 N.E.2d 876.) In *Palmateer*, this court discussed the

**4.** As *Orsini*, 637 F.Supp. at 40–41 noted, Illinois' retaliatory-discharge tort differs fundamentally from the Indiana situation dealt with in *Vantine v. Elkhart Brass Mfg. Co.*, 762 F.2d 511, 517–18 (7th Cir.1985). *Vantine* said Ind. Code § 22–3–2–15 and § 22–3–2–4 expressly gave CBA-covered employees a CBA-based contractual remedy (termination without just cause) where the employee is fired for filing a workers' compensation claim. Such a CBA-based cause of action was necessarily preempted by Section 301 (*id.* at 518). Similarly *Oglesby*, 752 F.2d at 276 (another case arising in Indiana) held plaintiff's claim of retaliatory discharge for complaining about OSHA violations could state only a CBA-based claim of termination without just cause, because there was no indication Indiana even recognizes an independent tort action of that nature for CBA-covered employees. See *id.* n. 1 ("The question of whether an employee subject to a union collective bargaining agreement can sue

for retaliatory discharge under Indiana law has apparently not been addressed by the courts of that state"). Thus *Vantine* and *Oglesby* do not control the outcome here, for Illinois' retaliatory-discharge tort is unquestionably independent of any CBA terms and vindicates an independent state policy. That puts it within the *exception* noted by *Oglesby*, 752 F.2d at 276 n. 3:

By contrast, where the right sought to be vindicated in a state court is based on a claim rooted in state policy which is no way conflicts with federal labor law policy, the action is not removable.

**5.** *Graf*, our Court of Appeals' most recent pronouncement on preemption (incidentally not cited by either party), calls for some further discussion on this score. To avoid any break in the current analysis, however, that discussion has been placed in the Appendix to this opinion.

meaning of "clearly mandated public policy":

> "There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. [Citation.] Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." 85 Ill.2d 124, 130, 52 Ill.Dec. 13, 421 N.E.2d 876.

Thus the Illinois Supreme Court has upheld retaliatory-discharge claims where a plaintiff was fired for refusing to operate equipment not meeting federal safety codes (*Wheeler v. Caterpillar Tractor Co.*, 108 Ill.2d 502, 510, 92 Ill.Dec. 561, 566, 485 N.E.2d 372, 377 (1985)) or for reporting to law-enforcement authorities the potentially criminal behavior of a fellow employee (*Palmateer*, 85 Ill.2d at 132–33, 52 Ill.Dec. at 16–17, 421 N.E.2d at 879–80). But no retaliatory-discharge claim was stated where a plaintiff was fired for filing a claim under the employer's group health insurance plan (*Price*, 109 Ill.2d at 68, 92 Ill.Dec. at 550, 485 N.E.2d at 361).

Against that background, it is difficult to say whether or not La Buhn's safety-based claim falls under the "clearly mandated public policy" rubric. La Buhn points to no Illinois case specifically endorsing his particular sort of claim, but none of the cases forecloses it either. Further, the portion of *Palmateer* quoted in *Price* plainly says "clearly mandated public policy" is as much a matter for "judicial decisions"—that is, for common-law rulemaking—as for statutory and constitutional commands. Though federal courts are foreclosed from developing state common law (see *Zick v. Verson Allsteel Press Co.*, 623 F.Supp. 927, 932–33 (N.D.Ill.1985)), obviously the Illinois courts are not. Only two weeks ago our Court of Appeals stressed that fact—a necessary consequence of *Erie v. Tompkins* jurisprudence (*Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 942 (7th Cir. 1986)):

> [F]ederal court is not the place to press innovative theories of state law.... [W]e take this occasion to remind that resident litigants who seek adventurous departures in state common law are advised to sue in state rather than federal court.

Two alternative possibilities therefore exist under Illinois law:

1. If an Illinois court would recognize La Buhn's safety-based claim as one properly brought for retaliatory discharge under *Midgett* principles, it is not preempted.

2. By definition if La Buhn has no such *Midgett*-type claim, his only remedy (if any) must be under the CBA. And that kind of remedy *is* federally preempted.

Which of those alternatives correctly states Illinois doctrine must logically be addressed in the first instance by the state courts, else CBA-covered employers could effectively block the development of state common law by removing all questionable claims.[6]

Of course there is a reciprocal concern: State courts could conceivably block implementation of federal labor policy, as expressed in Section 301, by recognizing retaliatory-discharge claims for any sort of employer misbehavior. If that risk were a likely one, it might cancel out the consideration identified in the preceding paragraph. But for the reasons identified in the final

---

**6.** It is no accident that *Anderson*, 801 F.2d at 942 speaks to much the same issue. At the same time it discouraged the invocation of federal diversity jurisdiction by a plaintiff seeking to expand the frontiers of state law, it distinguished the situation where the plaintiff had sued in state court, only to have defendant remove the action to federal court.

948

portion of the Appendix, it is not and does not.

■ In sum, had La Buhn stated his retaliatory-discharge claim solely in terms of his safety complaints, it would be for a state court, and not this Court, to determine whether that claim would be preempted by Section 301. But he did not do that. He also stated (in the alternative) he was fired in retaliation for filing a contractual grievance. No reflection is required to see *that* claim is clearly Section–301 preempted, for it must arise out of the CBA if at all. That in turn means the grievance-based claim arose under federal law, rendering the whole case properly removable (and that means the safety-based claim—the non-preempted aspect of La Buhn's claim—would come along by virtue of pendent jurisdiction, *Graf*, 790 F.2d at 1346).

■ As is typical in these preemption cases, a removing defendant tows the case into the federal harbor only to try to sink it once it is in port. And on that score Bulkmatic is undoubtedly right: La Buhn's grievance-retaliation claim must be dismissed as insufficient in law. Individual employees may not circumvent the Section–301–implemented collective-bargaining machinery through direct suits against their employer. Only if the employee simultaneously asserts the union—his agent for bargaining purposes—has breached its duty of fair representation can the employee at the same time maintain suit against the employer (*United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 62, 101 S.Ct. 1559, 1563, 67 L.Ed.2d 732 (1981)). Because La Buhn makes no such claim here, while his grievance-retaliation complaint must necessarily be grounded in Section 301 if at all, that claim against Bulkmatic succumbs.

■ Once that conclusion is reached, this Court has no reason to exercise its discretion in favor of retaining pendent jurisdiction over the other claim—the purely state-law-based safety complaint. Unlike the RLA situation faced in *Graf*, 790 F.2d at 1346–48, federal law either preempts that state cause of action or is wholly irrelevant

to it. *Graf's* direction to retain pendent jurisdiction of state-law claims where federal law provides a potentially dispositive defense (790 F.2d at 1347) therefore does not apply here.

Accordingly the usual rule of *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) applies, for La Buhn's federal claim has dropped out at an early stage and there is no prudential reason to hang on to the state claim. Only one possibility might command a different result: if the state claim were also preempted, this time by the NLRA. This opinion therefore turns to that question.

## NLRA Preemption

Even though La Buhn's safety-based claim may not be grounded in Section 301, there remains the possibility of viewing it as an unfair-labor-practice claim under Sections 7 and 8. If so, *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959) says the NLRB has exclusive primary jurisdiction over the dispute.

Resolution of that issue turns on whether or not La Buhn's actions constitute "concerted activity" protected by Section 7, an employer's interference with which constitutes an unfair labor practice under Section 8(a)(1). On that score, it would seem odd to characterize La Buhn's wholly unilateral actions as "concerted." Nonetheless some authority exists for the proposition La Buhn's safety complaints could be concerted activity, at least to the extent they "concern[ed] safety matters which are embodied in a contract." *Bechtel Power Corp.*, 277 NLRB No. 88, slip op. at 9–10 (Nov. 27, 1985).

While an individual's filing of a worker's compensation claim does not implicate group action or group interests and is thus not concerted activity (*Flick v. General Host Corp.*, 573 F.Supp. 1086, 1088 (N.D. Ill.1983)), *NLRB v. Town & Country LP Gas Service Co.*, 687 F.2d 187, 191 (7th Cir.1982) has said:

This [concerted activity] requirement may be satisfied by proof that an individual employee was attempting to enforce provisions of a collective bargaining agreement by way of the grievance procedure, to the extent that such conduct touches on the collective interests of bargaining unit members.

At the same time, *Town & Country, id.* (citations omitted, emphasis in original) explained that approach as probative of what it had just reaffirmed as established Seventh Circuit doctrine:

> Consistent with the statute's emphasis on *collective* activity, this court adheres to the following construction of Section 7:

>> "[I]n order to prove a concerted activity under Section 7 of the Act, it is necessary to demonstrate that the activity was for the purpose of inducing or preparing for group action to correct a grievance or a complaint."

Here La Buhn did of course take his second discharge through the CBA grievance procedure, and the safety concerns he voices may perhaps be viewed as CBA-based and thus "touch on the collective interests" of other Bulkmatic employees. But on a record consisting only of La Buhn's Complaint, there is nothing to suggest his own "activity was for the purpose of inducing or preparing for group action to correct" Bulkmatic's delinquencies (as *Town & Country* requires). Simply to pose the problem demonstrates (1) it must be resolved in factual terms, not on the pleadings, and (2) it is in part related to the inquiry this opinion has earlier found better suited to state-court resolution. And of course a state court is also just as well equipped as this Court to decide the factual questions and, if necessary, to apply *Garmon* preemption doctrine.

In short, the possibility of NLRA preemption of La Buhn's safety-based claim leads to no different result than that stated in the preceding section of this opinion. *United Mine Workers v. Gibbs* principles call for dismissal of that claim without prejudice to its reassertion in the state courts.[7]

### Conclusion

Preemption-jurisdiction problems of this kind take on the aspect of a Chinese puzzle box or the Cretan labyrinth. After following each of the alternative paths (to pursue the latter metaphor) this Court concludes and orders:

1. This case was properly removed to this Court on the basis that La Buhn's grievance-retaliation claim was preempted by Section 301. La Buhn's safety-complaint retaliation claim came along by pendent jurisdiction.

2. La Buhn's grievance-retaliation claim is dismissed under Rule 12(b)(6).

3. La Buhn's safety-complaint retaliation claim is dismissed without prejudice to its reassertion in the state courts.[8]

---

7. It might seem more efficient for this Court, having dismissed one of La Buhn's claims, simply to remand the surviving claim. However:

1. Remands are strictly limited to the grounds specified in the remand statutes. *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 344–45 & n. 9, 96 S.Ct. 584, 589–90 & n. 9, 46 L.Ed.2d 542 (1976); *Cook v. Weber,* 698 F.2d 907, 909–10 (7th Cir.1983).

2. Except for the 28 U.S.C. § 1447(c) ("Section 1447(c)") remand of a case "removed improvidently and without jurisdiction," the only potential for remand is the 28 U.S.C. § 1441(c) ("Section 1441(c)") discretionary remand of "separate and independent" non-removable claims joined with removable claims. As for Section 1447(c), that is rendered inapplicable by the presence of La Buhn's grievance-based claim at the time of removal. And as for Section 1441(c), the very reasons for this Court's leaving the safety-based claim to state-court determination include the potential avoidance of one of the issues that must be resolved to call Section 1441(c) into play. There is no need to risk the kind of error that led to reversal in *Thermtron* and to mandamus in *Carnegie-Mellon University v. Cohill,* No. 85–3619, slip op. at 7–15 (3d Cir. Aug. 29, 1986). Dismissal of the safety-based claim without prejudice (a disposition identical to that affirmed in *Cook*) is the most prudential answer.

8. At the end of its opening memorandum (though not in its actual motion) Bulkmatic "further request[ed] costs and attorneys' fees under Rule 11." Even if this Court were disposed to treat that request as a formal motion,

Accordingly, this action itself is dismissed (subject to the without-prejudice condition just described).

## Appendix

*Graf v. Elgin, Joliet & Eastern Railway Co.*, 790 F.2d 1341 (7th Cir.1986), the case in which our Court of Appeals has most recently treated preemption of Illinois-based employer retaliation claims, includes some aspects that require further analysis. Viewed solely in terms of its actual holding, *Graf* simply decided *Midgett*-type claims are preempted by RLA, though the Court did so without reference to *Koehler*'s administrative-scheme analysis of that issue. Instead *Graf,* 790 F.2d at 1346 (citing *Oglesby* ) adverted to a doctrine of "complete preemption in collective bargaining cases," saying:

> Where the worker is covered by a collective bargaining contract and therefore has a potential federal remedy, judicial or arbitrable [sic], the cases hold that the remedy is exclusive; the worker has no state remedies.

But of course the Supreme Court's teaching in *Lueck*—which of course controls the Court of Appeals as well as this Court—shows that statement is impermissibly overbroad, and as this opinion has already noted (see n. 4) the Court of Appeals' own decision in *Oglesby* did *not* really turn on a principle of "complete preemption." Thus *Graf* is right in saying complete preemption is now the rule as to Illinois-based *RLA*-covered claims (a result *Koehler* in any case made inevitable), but *Graf's* sweeping dictum as to the impact of *Section 301* does not ring true.

True enough, *Graf,* 790 F.2d at 1345 said the preemption question cannot turn on how the state courts characterize retaliatory discharge—as a breach of contract or as a tort. But what *Graf* never considered was the impact of *Midgett's* characterization and *its* specific holding: Public-policy-violative retaliatory discharges flout a state policy directed at all employers and

protecting all employees, irrespective of the existence or nonexistence of a CBA, and thus have nothing to do with the terms of any CBA. Perhaps in many (or even most) cases retaliatory discharge could also be labeled as a discharge "without just cause" under CBA terms (or as breaching whatever other limitation a particular CBA might contain), but under Illinois law that circumstance is wholly adventitious. As to Illinois law, the Illinois Supreme Court is literally the "supreme" authority—and its *Midgett* decision tells us Illinois policy forbids public-policy-violative retaliatory discharges with or without a CBA, and the parties to a CBA cannot by agreement wipe that out.

That brings into play *Lueck* 's clear message (105 S.Ct. at 1912, footnote omitted):

> Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

This Court found that language compelling in *Orsini,* and neither *Graf*'s dictum nor *Waycaster v. AT & T Technologies, Inc.,* 636 F.Supp. 1052, 1056–1058 (N.D.Ill.1986) —a more careful treatment by this Court's colleague Judge Marvin Aspen—requires a retreat from *Lueck* and *Orsini.* See also *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 2398, 85 L.Ed.2d 728 (1985):

> It would turn the policy that animated the Wagner Act on its head to understand it to have penalized workers who have chosen to join a union by preventing them from benefiting from state labor regulations imposing minimal standards on non-union employers.

the complexity of the legal issues here—and of course Bulkmatic's failure to prevail on many of

them—would make such an award wholly unjustified.

One other aspect of *Graf* merits discussion. It expressed concern lest federal preemption principles be subverted by a state's creation of apparent distinctions without a doctrinal difference (790 F.2d at 1345):

> Can it be that if wrongful discharge is a tort, the state court decides the issue of preemption subject only to review by the Supreme Court, while if it is a breach of contract, the federal court decides the issue, provided only that the defendant elects to remove the case from state court to federal court, as of course he can do if the case is deemed to arise under federal law? The procedural difference seems too great to allow it to depend on whether state law describes the same conduct—retaliatory discharge—as a tort or as a breach of contract. The state cannot be allowed, merely by the label it attaches to the cause of action, to interfere with the administration of a federal statute.

But that rhetorical passage offers less than meets the eye for three reasons:

1. Defendant can *always* get a federal court to look at the preemption issue by filing a removal petition. That is precisely what has happened here.

2. It has long been understood (*Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 511, 82 S.Ct. 519, 524, 7 L.Ed.2d 483 (1962)) "that the purpose of conferring [Section 301] jurisdiction upon the federal district courts was not to displace, but to supplement, the thoroughly considered jurisdiction of the courts of the various States over contracts made by labor organizations." Though state courts must of course apply whatever federal law exists in cases involving labor contracts, had Congress distrusted the state judiciary's inclination or ability to do so it would have made the federal courts' jurisdiction exclusive (see *id.* at 508–09, 82 S.Ct. at 523).

3. Nothing indicates the Illinois courts have indulged any profligate creation of employee tort remedies. Indeed *Koehler* shows the Illinois Supreme

Court's proper deference to the supremacy of federal law, and *Price* is but one of several instances where that Court has shown its willingness to restrict the development of the retaliatory-discharge tort to cases falling within the bounds of the stated public-policy rationale.

Indeed, the seeming distrust of state court integrity reflected in the language last quoted from *Graf* in this Appendix contrasts sharply with the notions of "Our Federalism" that inform so much of what now passes for non-activist jurisprudence.