James KLANK, Plaintiff,

v.

SEARS, ROEBUCK AND CO.,
Defendant.

No. 89 C 5037.

United States District Court,
N.D. Illinois, E.D.

Feb. 26, 1990.

Barry E. Garley, Chicago, Ill., for plaintiff.

Adele Rapport and Carol McHugh, Arnstein & Lehr, Chicago, Ill., for defendant.

MEMORANDUM OPINION
AND ORDER

SHADUR, District Judge.

James Klank ("Klank") initially sued Sears, Roebuck and Co. ("Sears") in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois. Sears timely removed the case to this District Court on the premise that although Klank's Complaint advanced only what purported to be state-law claims, federal jurisdiction nonetheless existed because the lawsuit was instinct with federal-question claims.[1] Now Klank—even though there has been a good deal of litigation activity and even though a briefing schedule has actually been set for Sears' anticipated summary judgment motion—has moved to remand to the state court for lack of subject matter jurisdiction.[2] For the reasons stated in this

---

1. There is no diversity of citizenship between Klank and Sears, so that any potential for federal jurisdiction is wholly dependent on the existence vel non of one or more federal questions.

2. It is never too late, of course, to raise the absence of subject matter jurisdiction. For a near-classic example of the waste of resources (both judges' and litigants') that may flow from a failure to do so, see *Wojan v. General Motors Corp.*, 851 F.2d 969, 971 (7th Cir.1988) (dismissal for lack of diversity jurisdiction 5-½ years after case initially filed). And for an even more

dramatic one, in which this Court labored in the vineyards for over five years before an esoteric jurisdictional flaw was picked up during the course of a partial appeal (and the problem was ultimately compounded by involving all the Court of Appeals' judges in an en banc consideration and then by ultimately involving the Supreme Court as well), see *Newman–Green, Inc. v. Alfonzo–Larrain,* — U.S. ——, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) and opinions below, 832 F.2d 417 (7th Cir.1987) and 854 F.2d 916 (7th Cir.1988) (en banc).

memorandum opinion and order, Klank's motion is granted.

### Facts [3]

On September 28, 1988 Sears announced it would be closing its Oakbrook Center, Illinois Catalogue Unit effective January 2, 1989. At that time Klank had been working at Sears' Oakbrook retail store for his entire 22–year tenure as a Sears employee.

Just a month after the Sears announcement (on October 28) Klank met with three Sears people—his supervisor, a representative from Sears' Personnel Department and the store manager—to discuss his voluntary resignation from Sears' employment, and he in fact left Sears that very day. At the meeting none of the Sears people disclosed to Klank the imminent announcement by Sears (which was made by a Sears letter transmitted on the next business day, October 31) of a special severance pay package for its Oakbrook Center Retail Store employees. Under that plan Klank would have been an eligible employee who could have left his employment on December 31 (rather than his actual date of departure) and would then have received a combination of normal retirement benefits *and* a service allowance. That nondisclosure, coupled with Klank's October 28 departure in ignorance of Sears' future announcement, deprived Klank of the benefits that he would have received had he remained with Sears until the plan was put into effect.

Klank's state-court lawsuit was framed in three counts, respectively charging fraud (Count I), negligent misrepresentation (Count II) and breach of confidential relationship (Count III). In Sears' view, however, the claims inherently implicated the federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, because the benefits Klank lost out on were provided by an "employee benefit plan" as defined in ERISA § 1002(3),[4] thus establishing the predicate for removal.

### Principles of Removal: ERISA–Based Claims

It is scarcely necessary at this late stage to repeat the familiar proposition that plaintiffs can usually choose their grounds of action so as to choose their own forums—as the classic statement by Justice Holmes in *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913) (citation omitted) put it:

> Of course, the party who brings a suit is master to decide what law he will rely on, and therefore does determine whether he will bring a "suit arising under" [any] law of the United States by his declaration or bill. That question cannot depend upon the answer, and accordingly jurisdiction cannot be conferred by the defense, even when anticipated and replied to in the bill.

Nor is it necessary to expound at any length on what has become the major exception to that proposition: the concept of pervasive congressional preemption of an area of law so as to render all claims in that area federal-question claims, even though a plaintiff may seek to state those claims purely in state-law terms. *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95

**3.** This account is brief—for no more than a skeletal outline is necessary to pose the legal issue—and is based on Klank's Complaint allegations. Although Sears' Answer to Klank's Complaint denies some aspects of Klank's allegations and advances Sears' own version instead, none of the disparities in the respective allegations of facts in any way affects the legal analysis and conclusions expressed in this opinion.

**4.** All citations to ERISA provisions in this opinion will refer to the section numbering in Title 29 rather than ERISA's internal numbering. To avoid any confusion introduced by the difference between that numbering and the internal numbering often used in the reported cases (including some quoted in this opinion), it should be kept in mind that the Title 29 numbering differs from the internal numbering in the sections relevant to this case—thus, for example, the definitional section cited in the text is internally numbered Section 3(3) within ERISA, while the most critical section for the current opinion—ERISA § 1132(a)—is frequently referred to in reported cases as "Section 502(a)," the internal statutory number.

L.Ed.2d 55 (1987) (citations omitted) has summarized the exception this way:

> It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law.... The "well-pleaded complaint rule" is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts....
>
> Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court.... One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character.

ERISA § 1132(a)(1)(B) has followed Section 301 of the Labor Management Relations Act ("LMRA") into the fold of such completely preempted areas. *Metropolitan Life, id.* described the evolution from *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 25–27, 103 S.Ct. 2841, 2854–56, 77 L.Ed.2d 420 (1983) (which had held that ERISA preemption was not by itself enough to make a state-law claim removable) into the necessary removability of any action that came "within the scope" of Section 1132(a):

> In *Franchise Tax Board*, the Court held that ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S., at 25–27 [103 S.Ct., at 2854–56]. The court suggested, however, that a state action that was not only pre-empted by ERISA, but also came "within the scope of § 502(a) of ERISA" might fall within the *Avco* [*Corp. v. Aero Lodge No. 735, Intern. Ass'n. of Machinists and Aerospace Workers*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) ] rule. *Id.*, 463 U.S. at 24–25 [103 S.Ct. at 2854].

Because the Court then found that "the language of the jurisdictional subsection of ERISA's civil enforcement provisions closely parallels that of § 301 of the LMRA" (*id.* 481 U.S. at 65, 107 S.Ct. at 1547), *Metropolitan Life, id.*, 481 U.S. at 66–67, 107 S.Ct. at 1547–48 held:

> No more specific reference to the *Avco* rule can be expected and the rest of the legislative history consistently sets out this clear intention to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA.

> \*     \*     \*     \*     \*     \*

> [A]s we have noted, even an "obvious" preemption defense does not, in most cases, create removal jurisdiction. In this case, however, Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court. Since we have found Taylor's cause of action to be within the scope of § 502(a), we must honor that intent whether pre-emption was obvious or not at the time this suit was filed.

> Accordingly, this suit, though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress. It, therefore, "arise[s] under the ... laws ... of the United States," 28 U.S.C. § 1331, and is removable to federal court by the defendants, 28 U.S.C. § 1441(b).

### *"Scope" of ERISA § 1132(a)(1)(B)*

As Sears would have it, the just-stated doctrine ends the discussion. Sears' argument is syllogistic and simplistic in nature:

1. All actions "within the scope" of ERISA § 1132(a)(1)(B) are willy-nilly federal-question actions and hence removable.

2. Klank's action is within that scope.

3. Ergo, Klank's action was properly removed to this District Court.

But although Sears' major premise is solidly rooted in the Supreme Court's *Met-*

*ropolitan Life* teaching, Sears' argument breaks down entirely in its minor premise. For that purpose Sears cites a group of cases (*Muenchow v. Parker Pen Co.*, 615 F.Supp. 1405, 1416–18 (W.D.Wis.1985); *Boesl v. Suburban Trust & Savings Bank*, 642 F.Supp. 1503, 1514 (N.D.Ill.1986); *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 799–801 (9th Cir.1987); *Lister v. Stark*, 890 F.2d 941 (7th Cir.1989); *Armbruster v. Benefit Trust Life Insurance Co.*, 687 F.Supp. 403, 404–05 (N.D.Ill.1988); cf. *Reilly v. Blue Cross & Blue Shield United of Wisconsin*, 846 F.2d 416, 426 (7th Cir. 1988))[5] in which the plaintiffs claimed benefits under employee benefit plans—in which the plaintiffs were plan *participants* or *beneficiaries*. In such cases, even though the lawsuits may have charged the wrongful denial of such benefits, the same principle announced in *Metropolitan Life* commanded a decision of removability.[6]

What Sears' thoughtful presentation has missed, however, is the fact that Klank is *not* suing as a beneficiary or participant under an employee benefit plan—he does *not* come "within the scope" of ERISA § 1132(a)(1)(B). Instead he complains that he was misled by Sears' nondisclosure of a future (though then nonexistent) employee benefit plan. To be sure, Klank's measure of *damages* if his lawsuit were to succeed will be ascertained by reference to that later-announced plan, but that does not at all equate with bringing him within the scope of the statutory section. Suit as a *non* beneficiary or *non* participant does not translate by some sleight of hand into suit as a beneficiary or participant.

Nor is Sears any better off by reference to the other ERISA provision it seeks to invoke, ERISA § 1132(a)(3). Although the relief available under that provision may be read somewhat more broadly than the recovery of plan benefits or the enforcement

of plan rights (the scope of ERISA § 1132(a)(1)(B)), it too is limited to civil actions by a participant or beneficiary. If Klank does not fit that "participant or beneficiary" description for purposes of one statute (as this Court holds he does not), he does not fit the same description in the other statute.

This Court, having thus reviewed the matter in conceptual terms, announced its proposed conclusion to the effect just described when the parties first came in on the motion call for Klank to present his motion for remand. Sears then asked and was given the opportunity to file a memorandum in response, and its submission (a February 23, 1990 letter memorandum) both cited and argued the cases referred to earlier in this opinion. But what Sears' presentation did not mention is that our Court of Appeals' decision in *Lister*, en route to stating that court's decision under the facts presented there, was called upon to distinguish a Fourth Circuit case that signalled precisely the kind of analysis this Court had announced.[7] Here is what *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120–21 (4th Cir.1989) had to say on the subject:

> Plaintiffs' state law claims for breach of contract, promissory estoppel and negligent misrepresentation (counts six, eight and nine, respectively) should not have been dismissed. ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan ..." 29 U.S.C. § 1144(a) (1982). As the district court correctly noted, this Court has stated that "the phrase 'relate to' has been read expansively, giving 'unparalleled breadth' to the preemption provision." *Salomon v. Transamerica Occidental Life Ins. Co.*, 801 F.2d 659, 661 (4th Cir.1986). Nevertheless, the claims asserted here are not

---

5. These cases are listed not in the traditional sequence for case citations, but simply in the order in which they appear in Sears' February 23 letter memorandum addressing the issues dealt with in this opinion.

6. As will be seen from their dates, some of the cases relied on by Sears antedated rather than followed *Metropolitan Life*. That, however, nei-

ther adds to nor detracts from any force they may have on the current motion.

7. It is implicit in this decision, and this Court specifically finds, that the grounds for distinction expressed in *Lister* are entirely beside the mark here. Instead this case is substantially parallel to *Pizlo* and not to *Lister*.

preempted by ERISA because they do not "relate to" an employee benefit plan. In *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140 (4th Cir.1985), *affirmed sub nom. Brooks v. Burlington Industries, Inc.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559, *cert. denied sub nom. Slack v. Burlington Industries, Inc.*, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986), we noted the policies underlying ERISA:

> Preemption applies to a state cause of action under common law as well, for the state breach of contract and estoppel claims pose the same potential as the statutory cause of action for *conflicting employer obligations and variable standards of recovery.* As in *Gilbert [Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320 (2nd Cir. 1985)], "the state law claims ... *would determine whether any benefits are paid, and directly affect the administration of benefits under the plan."* 765 F.2d at 327.

772 F.2d at 1147 (emphasis added); *see also Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987).

The claims here would not submit Bethlehem to "conflicting employer obligations and variable standards of recovery", "determine whether any benefits are paid" nor "directly affect the administration of benefits under the plan." *See Sorosky v. Burroughs Corp.*, 826 F.2d 794, 900 (9th Cir.1987). The claims do not bring into question whether Plaintiffs are eligible for plan benefits, but whether they were wrongfully terminated from employment after an alleged oral contract of employment for a term. In their state law claims, the Plaintiffs seek from the corporation compensatory damages for

wages and pension, health, life and disability benefits that they would have been entitled to had the alleged contract to work until age 62 not been breached. If the Plaintiffs prevail, the damages would be measured in part by the lost pension benefits the Plaintiffs would have received, but the pension trust itself would not be liable and the administrators of the pension plan would not be burdened in any way. *See Fort Halifax Packing*, 107 S.Ct. at 2218 (Once "single event" of writing check to compensate plaintiff is over, employer has no further responsibility); *Schlenz v. United Airlines, Inc.*, 678 F.Supp. 230, 235 (N.D. Cal.1988) (Damage award for lost future benefits nothing more than a "one time, lump sum" payment which does not implicate concerns underlying ERISA); *Totton v. New York Life Ins. Co.*, 685 F.Supp. 27, 31 (D.Conn.1987) (Although amount of recovery could, in part, be measured by benefits the plan would have provided, it does not become an obligation of the plan).

Klank's case is not a perfect match to that in *Pizlo*. But the operative concept in the two cases is identical: the distinction between (1) claiming as an actual beneficiary or participant under an employee benefit plan and (2) claiming as a *non* beneficiary or *non* participant whose damages might be measured by the plan's formula. No philosopher's stone transmutes Klank's state law claims into federal question claims for removal purposes.[8]

### Conclusion

This area of the "well-pleaded complaint" and the complete preemption exception can be a tricky one. It has led more than one court astray.[9] Sears may certainly be par-

---

8. There is always some risk in the use of metaphors. After this Court had dictated the one employed in the text, it was struck by the fact that its reference to the philosopher's stone might be misunderstood to imply that state-law claims are base metal while federal-question claims are pure gold. No such mischaracterization is intended, of course.

9. Our own Court of Appeals ran aground on the conceptual shoals of the preemption doctrine as

applied to LMRA § 301 in *Lingle v. Norge Division of Magic Chef, Inc.*, 823 F.2d 1031 (7th Cir.1987) (en banc), *rev'd* by a unanimous Court, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). This Court had been more than an interested spectator to that controversy, for it had been almost alone among the judges in this Circuit that had viewed cases in the category dealt with in *Lingle* as not preempted and hence as non-removable—so much so that the Court of

doned for having sought removal on the basis it did. But on analysis this Court has determined that it lacks subject matter jurisdiction, and under those circumstances 28 U.S.C. § 1447(c) commands the return of this action to the state court. Because no delay is justified as might be permitted under this District Court's General Rule 30(b), the Clerk of Court is directed to mail the certified copy of the remand order forthwith.[10]

Appeals' opinion in *Lingle* reached out to criticize this Court for an asserted failure to adhere to the Court of Appeals' teaching in earlier cases (823 F.2d at 1044 n. 14). With all respect, that criticism really reflected a total misreading of this Court's opinions in such cases as *La Buhn v. Bulkmatic Transport Co.,* 644 F.Supp. 942 (N.D. Ill.1986) (the decision criticized in *Lingle* ) and *Orsini v. Echlin, Inc.,* 637 F.Supp. 38 (N.D.Ill. 1986)—and as the later reversal of *Lingle* demonstrated, the criticism reflected a total misreading of the Supreme Court's prior preemption teaching as well. In all events, the Supreme Court's decision in *Lingle* supported the rulings this Court had been issuing in those cases, and our Court of Appeals later affirmed *LaBuhn* after the Supreme Court had issued its opinion in *Lingle* (*LaBuhn v. Bulkmatic Transport Co.,* 865 F.2d 119 (7th Cir.1988)).

10. It is surprising how frequently serendipitous discoveries accompany the process of opinion writing. On the very next day after this opinion had been announced to the parties orally, this Court had dictated it for transcription onto the word processor, when the postman delivered and this Court read the February 20, 1990 issue of United States Law Week. That issue reported an Iowa Supreme Court decision (*Bricker v. Maytag Co.,* 450 N.W.2d 839 (Iowa 1990)), which held that an action asserting claims strikingly similar to those advanced both here and in *Pizlo* was not preempted by ERISA. *Bricker*'s reasoning was all of a piece with what has been set forth here (and was thus entirely in accord with the above-quoted language in *Pizlo* ).