823 F.2d 1031
 125 L.R.R.M. (BNA) 2855, 56 USLW 2021,
106 Lab.Cas. P 12,447,
2 Indiv.Empl.Rts.Cas. 353
 Jonna R. LINGLE, Plaintiff-Appellant,
v.
NORGE DIVISION OF MAGIC CHEF, INC., Defendant-Appellee.
Pamela S. MARTIN, Plaintiff-Appellant,
v.
CARLING NATIONAL BREWERIES, INC., a foreign corporation, G.
Heileman Brewing Company, Inc., a foreign corporation, d/b/a
Carling National Breweries, John Snyder, and Charles Rhein,
Defendants-Appellees.
 Nos. 85-2971, 86-1763.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 28, 1986 and Nov. 6, 1986.
Consolidated and Reargued En Banc April 29, 1987.
Decided June 23, 1987.
 
 Paul Alan Levy, Public Citizen Litigation Group, Washington, D.C., Ralph T. Stenger, Law Office of Ralph T. Stenger, Belleville, Ill., for plaintiffs-appellants.
 Daniel R. Begian, McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, Mo., P. Michael Kimmel, Gilbert, Kimmel, Huffman & Prosser, Ltd., Carbondale, Ill., for defendants-appellees.
 Before BAUER, Chief Judge, and CUMMINGS, WOOD, Jr., CUDAHY, POSNER, COFFEY, FLAUM, EASTERBROOK, RIPPLE, and MANION, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 These cases present issues of extreme importance affecting workers covered by collective bargaining agreements. We must decide whether a claim of retaliatory discharge, a claim of intentional interference with an employment contract, and a claim that certain discharge procedures are defective, are preempted by Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a) (1982).[1] We conclude that Sec. 301 preempts these state claims, and therefore affirm the judgments of the district court.
 
 I.
 A.
 
 2
 The facts underlying Lingle are not disputed. The plaintiff, Lingle, was an employee of the defendant Norge Division of Magic Chef, Inc., and was covered by a collective bargaining agreement. The agreement was effective during the period in which Lingle's dispute arose.
 
 
 3
 On December 5, 1984, Lingle notified her employer that she had sustained an injury while employed at its facility in Herrin, Illinois. The plaintiff, relying on the Illinois Workers' Compensation Act, requested that Norge pay her medical bills. On December 11, 1984, Norge fired the plaintiff on the ground that she had filed a false worker's compensation claim. Lingle asserts that she was discharged solely in retaliation for exercising her worker's compensation rights.
 
 
 4
 Article 26 of the collective bargaining agreement provided that an employee could not be discharged except for just cause.[2] The agreement also contained, in Article 8.5, mandatory arbitration and grievance procedures that were to be the exclusive remedy for all disputes. The same day that Lingle was fired, the union filed a grievance on plaintiff's behalf, denying Norge's assertion that her worker's compensation claim was false. She has successfully arbitrated that claim, and received reinstatement and back pay.
 
 
 5
 On July 9, 1985, Lingle filed suit in the Circuit Court for Williamson County, Illinois. In her complaint, she alleged that she had been discharged in violation of Illinois law.
 
 
 6
 On August 21, 1985, Norge removed the case to federal court on the basis of diversity. On September 16, 1985, Norge moved to stay the proceedings in the district court or, in the alternative, to dismiss the case for lack of subject matter jurisdiction. Norge's theory was that the claim was preempted. The plaintiff argued that her claim was independent of any rights or remedies contained in the collective bargaining agreement.
 
 
 7
 The district court, relying on Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), held that Lingle's retaliatory discharge claim was preempted by Sec. 301, because it was inextricably interwined with the collective bargaining agreement. The district court, conduding that her claim was a Sec. 301 claim, dismissed the case for failure to exhaust the grievance and arbitration procedures provided by the collective bargaining agreement. See Lingle v. Norge Division of Magic Chef, Inc., 618 F.Supp. 1448 (S.D.Ill.1985).
 
 B.
 
 8
 The facts underlying Martin are somewhat in dispute. The plaintiff was an employee of the defendant Carling National Brewery, and was covered by a collective bargaining agreement. The collective bargaining agreement was negotiated between the Teamsters Local Union No. 50 and G. Heileman Brewing Company, and was effective from August 4, 1979, through November 27, 1983.
 
 
 9
 On June 26, 1983, the plaintiff was injured in Cellar No. 7 at the Carling National Brewery located in Belleville, Illinois. The injury occurred in the course of her employment. Thereafter, on June 28, 1983, the plaintiff was discharged. Martin alleges that she was discharged for expressing her intent to file a worker's compensation claim. Subsequently she did file such a claim. On June 30, 1983, a meeting was scheduled between the plaintiff and Charles Rhein, the industrial relations manager of the defendant G. Heileman Brewing Company, to discuss plaintiff's discharge. The plaintiff did not attend this meeting.
 
 
 10
 Article XVI of the collective bargaining agreement, the termination of seniority clause, provided that an employee could not be discharged or disciplined except for just cause.[3] Article XI contained mandatory arbitration and grievance procedures. Rather than follow these procedures, the plaintiff filed an eleven-count civil action on June 27, 1985, in the Circuit Court for St. Clair County, Illinois. In the first four counts she requested compensatory and punitive damages on the ground that she was discharged solely because she had stated her intention to exercise her rights under the Illinois Workers' Compensation Act. Count V was directed against an employee, John Snyder, for intentional interference with her employment contract with the G. Heileman Company. This count, like counts I through IV, made no reference to the collective bargaining agreement, but rather alleged that a contractual relationship beyond the collective bargaining agreement existed between plaintiff and the G. Heileman Company.
 
 
 11
 Counts VI and VII of the complaint were directed against defendant Rhein for negligently and willfully failing to correctly implement discharge procedures. Counts VIII and IX were against Carling National Brewery and the G. Heileman Company, respectively, alleging the same theory of liability as counts VI and VII on the ground that the two companies were responsible for the actions of their agent Rhein. Counts X and XI contained the same allegations as counts VIII and IX, but requested punitive damages. Counts VI through XI made no reference to the collective bargaining agreement.
 
 
 12
 On August 14, 1985, the defendants removed the case to the United States District Court for the Southern District of Illinois, alleging that the plaintiff's claim was based upon Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a) (1982). Removal was asserted under 28 U.S.C. Sec. 1441, on the basis that the district court had original jurisdiction pursuant to 29 U.S.C. Sec. 185(a).
 
 
 13
 Plaintiff filed a motion to remand pursuant to 28 U.S.C. Sec. 1445(c), which provides that:
 
 
 14
 A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States.
 
 
 15
 Martin argued that none of the counts in her complaint were removable, or in the alternative, that counts I through IV should be severed and remanded as required by Sec. 1445(c).
 
 
 16
 On January 21, 1986, the district court denied the plaintiff's motion to remand. Relying on his prior decision in Lingle v. Norge Division of Magic Chef, Inc., 618 F.Supp. 1448 (S.D.Ill.1985), Judge Foreman found that all eleven counts were preempted by Sec. 301, because they were "inextricably intertwined with considerations of the terms of [the] collective bargaining agreement and its provisions which provide for termination only upon just cause." Martin v. Carling National Breweries, Inc., No. 85-3321 (S.D.Ill. Jan. 21, 1986) (order denying remand). On April 11, 1986, the district court dismissed the plaintiff's lawsuit because of, inter alia, the plaintiff's failure to exhaust the grievance and arbitration machinery provided by the collective bargaining agreement.
 
 II.
 
 17
 On these appeals we must decide whether the plaintiffs' claims were removable, and if so, whether they were preempted by Sec. 301. In order to determine removability we must examine, as a matter of federal law, the nature of the plaintiffs' claims. We briefly discuss the development of the tort of retaliatory discharge in Illinois to aid our determination of whether federal law encompasses the plaintiffs' claims.
 
 
 18
 The Supreme Court of Illinois first announced the tort of retaliatory discharge in Kelsay v. Motorola, Inc., 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). The Illinois court established this cause of action, which it labeled as a "tort," 23 Ill.Dec. at 564, 384 N.E.2d at 358, for those workers who were fired because they filed worker's compensation claims. The court limited the application of its decision to at-will employees who, the court felt, were otherwise subject to an employer's absolute power to terminate. Id., 73 Ill.Dec. at 563, 384 N.E.2d at 357. The court stated that the purpose of this tort was to uphold and implement the public policy of the Workers' Compensation Act of Illinois, Ill.Rev.Stat. ch. 48, paragraphs 138.1-138.30 (1986).[4] Kelsay, 23 Ill.Dec. at 563, 384 N.E.2d at 357. The court did not, however, characterize this new cause of action as an addition to the worker's compensation laws.
 
 
 19
 "The dual emphasis in Kelsay upon the public policy underlying the Workers' Compensation Act, and the plight of the at will employee created uncertainty about the scope of the retaliatory discharge tort." Comment, Retaliatory Discharge--Illinois' Extension of Retaliatory Discharge Tort Actions to Employment Relationships Governed by Collective Bargaining Agreements: New Obstacles Imposed By Federal Labor Law Preemption, 1985 S.Ill.L.Rev. 707, 709 (footnote omitted). This uncertainty was resolved in Midgett v. Sackett-Chicago, Inc., 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984), cert. denied, 474 U.S. 909, 106 S.Ct. 278, 88 L.Ed.2d 243 (1985), in which the court held that an employee covered by a collective bargaining agreement could file suit against an employer if the employer had discharged the employee in retaliation for seeking benefits under the Workers' Compensation Act. The court reasoned that unless it extended its judicially created tort remedy to employees covered by collective bargaining agreements, an employer, who was a party to a collective bargaining agreement, could only be obligated to give back pay, and could not be held liable for punitive damages for violating an important public policy of the State of Illinois. Midgett, 85 Ill.Dec. at 479, 473 N.E.2d at 1284. The Illinois court further held that extending the cause of action to such employees would not have an adverse effect on congressionally favored grievance and arbitration procedures. Id. However, the court expressly declined to reach the issue of federal preemption.
 
 
 20
 Midgett was reaffirmed in Boyles v. Greater Peoria Mass Transit Dist., 113 Ill.2d 545, 101 Ill.Dec. 847, 851, 499 N.E.2d 435, 439 (1986). The Boyles court held that an employee who is covered by a collective bargaining agreement may bring a retaliatory discharge suit against a public entity employer, even though the public entity is not subject to an award of punitive damages. Boyles, 101 Ill.Dec. at 851, 499 N.E.2d at 439. The Illinois Supreme Court, once again, did not discuss the effect of federal preemption on the state tort claim.
 
 
 21
 Most recently, the Illinois Supreme Court in Gonzalez v. Prestress Engineering Corp., 115 Ill.2d 1, 104 Ill.Dec. 751, 503 N.E.2d 308 (1986), was faced directly with the issue of whether the tort of retaliatory discharge is preempted by federal labor law. In both cases consolidated for review in Gonzalez, the employees were covered by a collective bargaining agreement that contained a just cause discharge provision. Both workers filed worker's compensation claims and were subsequently discharged. Instead of following the grievance procedures that were set forth in the collective bargaining agreement to challenge their discharge, the plaintiffs filed suit in state court alleging retaliatory discharge.
 
 
 22
 The Illinois Supreme Court, after discussing Allis-Chalmers v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), held that the plaintiffs' retaliatory discharge claims were not preempted. The court distinguished two of its prior decisions that seemed to weigh against its holding.[5] The court concluded that the claims were not preempted because the tort of retaliatory discharge was grounded in Illinois public policy, "which, regardless of the existence or absence of a collective-bargaining agreement, confers upon all employees and employers certain nonnegotiable rights and imposes certain nonnegotiable duties and obligations." Gonzalez, 104 Ill.Dec. at 755, 503 N.E.2d at 312. Justice Ryan, in dissent, however, pointed out that "[w]hether or not one agrees that as a matter of State law 'just cause' includes retaliatory discharge is simply irrelevant.... Thus, a State court lacks authority to declare that as a matter of State law a given claim is or is not within the scope of the 'just cause' provision." Id., 104 Ill.Dec. at 758, 503 N.E.2d at 315 (dissenting opinion).
 
 
 23
 With this background and understanding of the tort of retaliatory discharge in Illinois, we now reach the merits of the parties' contentions.
 
 III.
 A.
 
 24
 A federal court may not, of course, address the merits of a claim without first determining whether it has jurisdiction. Accordingly, when a case is removed to federal district court under 28 U.S.C. Sec. 1441(b)[6], the court must be assured that the claim arises under the Constitution, treaties, or laws of the United States. Only after a court finds that it has jurisdiction may it reach the merits.
 
 
 25
 In Martin, the district court discussed the preemption issue and then found it had jurisdiction. The Martin court apparently reasoned that if the claim was preempted by Sec. 301, the court necessarily had jurisdiction. Although the district court reached the correct result, it decided these issues in reverse order. In Lingle, the district court addressed only the preemption issue.
 
 
 26
 Because of the confusion surrounding the proper approach to a Sec. 301 preemption claim that is removed to a district court, we now set forth the proper analytical framework. See Caterpillar Inc. v. Williams, --- U.S. ----, ----, 107 S.Ct. 2425, 2428-32, 96 L.Ed.2d 318 (1987); Twitchell, Characterizing Federal Claims: Preemption, Removal, and the Arising-Under Jurisdiction of the Federal Courts, 54 Geo.Wash.L.Rev. 812 (1986) (hereinafter "Twitchell"). A federal court must first determine whether it has jurisdiction. In a case originally brought in a state court, this requires the federal court to determine whether the suit was properly removed. Then, and only then, may a court determine whether or not federal law preempts the state cause of action.[7] To decide the preemption issue, before determining whether proper jurisdiction exists, is to allow the tail to wag the dog. We have in several cases followed the correct approach, although without expressly setting forth the proper analytical framework. See, e.g., Mitchell v. Pepsi-Cola Bottlers, Inc., 772 F.2d 342 (7th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986); Oglesby v. RCA Corp., 752 F.2d 272 (7th Cir.1985).
 
 
 27
 Our analysis will follow several steps. We begin with the principle that, because a federal court must always determine its own jurisdiction de novo, state court characterizations of a claim are not binding on the federal court. Thus, even if a state views a cause of action, such as retaliatory discharge, as part of its worker's compensation laws, 28 U.S.C. Sec. 1445(c), which precludes the removal of state worker's compensation actions, would not necessarily bar removal. Based upon this principle, we find that, in this case, 28 U.S.C. Sec. 1445(c) is not a bar to removal. We then discuss the general principles of removal jurisdiction and note that a federal court may, in some situations, look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded her suit so as to couch a federal claim in terms of state law. We conclude that, in these cases, the plaintiffs' claims actually arose under federal law and are therefore removable. The next step is to determine whether federal law preempts the plaintiffs' claims. We discuss the differences in the types of labor law preemption, conclude that the preemption cases that discuss Sec. 301 are controlling, and hold that the plaintiffs' claims are preempted. Finally, we hold that, because the plaintiffs did not exhaust their administrative remedies, dismissal of each suit was proper.
 
 B.
 
 28
 A suit may be removed to federal district court under 28 U.S.C. Sec. 1441(a) only if it could have been brought there originally. Illinois v. Kerr-McGee Chemical Corp., 677 F.2d 571, 574 (7th Cir.1982). Under Sec. 1441(b) a defendant may remove a cause of action presenting a federal question to a federal court without regard to diversity of citizenship. Mitchell, 772 F.2d at 344. However, Sec. 1445(c) limits Sec. 1441 by barring the removal of a suit if it arises under the worker's compensation laws of a state.
 
 
 29
 The plaintiffs argue that section 1445(c) of Title 28 of the United States Code bars the removal of their retaliatory discharge claims, because these claims arise under the Workers' Compensation Act of Illinois. We must first determine, therefore, whether or not Sec. 1445(c) bars the removal of the plaintiffs' retaliatory discharge claims. We conclude that Sec. 1445(c) does not bar removal of the plaintiffs' claims, because each plaintiff has asserted a claim for breach of the collective bargaining agreement and not a worker's compensation claim. See Vantine v. Elkhart Brass Mfg. Co., 762 F.2d 511, 517 (7th Cir.1985) ("In view of the fact that the employee has a cause of action for breach of the collective bargaining agreement, the claim does not arise under the Indiana Workman's Compensation Act, and thus federal jurisdiction is not barred under 28 U.S.C. Sec. 1445(c).").
 
 
 30
 Section 1445(c) was passed to help ease the burden on the federal court dockets. S.Rep. No. 1830, 85th Cong., 2d Sess. 7-8, reprinted in 1958 U.S.Code Cong. & Admin.News 3099, 3106. Congress apparently felt that removal of state worker's compensation claims to federal court would nullify the "expedit[ious] and inexpensive" procedures that the states had set up. Id. at 8, reprinted in 1958 U.S.Code Cong. & Admin.News at 3106. It was Congress' intent that "the workman [have] the option to file his case in either the Federal or the State court. If he files in State court it is not removable to the Federal court." Id. Section 1445(c) thus bars removal of all worker's compensation claims. See, e.g., Alexander v. Westinghouse Hittman Nuclear, Inc., 612 F.Supp. 1118 (N.D.Ill.1985) (Sec. 1445(c) bars removal even if diversity exists); Thomas v. Kroger Co., 583 F.Supp. 1031 (S.D.W.Va.1984).
 
 
 31
 The plaintiffs claim that, as a matter of state law, their retaliatory discharge claims arise under the Illinois Workers' Compensation Act. Although the Illinois Supreme Court has stated that its purpose in creating the retaliatory discharge cause of action was to protect the public policy concerns that underlie the Illinois Workers' Compensation Act, it has referred to retaliatory discharge as a tort. See Kelsay, 23 Ill.Dec. at 564, 384 N.E.2d at 358.
 
 
 32
 Even if the Illinois courts had labeled the tort of retaliatory discharge as one arising under the Illinois Workers' Compensation Act, thus ostensibly barring removal under Sec. 1445(c), that determination would not necessarily be binding on this court.[8] See Standard Oil Co. of California v. Johnson, 316 U.S. 481, 483, 62 S.Ct. 1168, 1169, 86 L.Ed. 1611 (1942). This is because the meaning of "workmen's compensation laws" in Sec. 1445(c) is a matter of federal law, regardless of the label a state may give an action. This would hold true even if a state, as some do, classified retaliatory discharge as a breach of contract claim. See, e.g., Brockmeyer v. Dun & Bradstreet, 113 Wis.2d 561, 335 N.W.2d 834 (1983). If retaliatory discharge is classified as a contract claim, the collective bargaining agreement would clearly be implicated. As we recently said: "The state cannot be allowed, merely by the label it attaches to the cause of action, to interfere with the administration of a federal statute." Graf v. Elgin, Joliet & Eastern Railway Co., 790 F.2d 1341, 1345 (7th Cir.1986); see Allis-Chalmers v. Lueck, 471 U.S. 202, 218 n. 13, 105 S.Ct. 1904, 1915 n. 13, 85 L.Ed.2d 206 (1985). If the Illinois court's determination of the claim in this case were binding upon this court, the entire federal framework of collective bargaining would be undermined. That is, the burden of resolving labor disputes would be shifted to the courts, rather than being resolved by arbitration, thus frustrating the policy underlying the federal labor laws.
 
 
 33
 A state court's characterization of a claim cannot be binding on a federal court not only because of the policy underlying the federal labor laws, see Graf, 790 F.2d at 1345, but also, and more important, because federal courts are courts of limited jurisdiction and have the duty to examine their jurisdiction de novo in each case. A state court can neither enlarge federal judicial power nor narrow it by characterizing a federal claim as a state claim. To do so would be to allow a state court to defeat a congressional directive. The determination of whether the tort of retaliatory discharge arises under federal law, and is therefore removable, is a federal question. See Standard Oil Co., 316 U.S. at 483, 62 S.Ct. at 1169. We conclude that the plaintiffs' retaliatory discharge claims arise under federal law, so that Sec. 1445(c) does not bar removal.[9]
 
 
 34
 We must next determine if the requirements of Sec. 1441 are met. Section 1441(b) permits removal if the complaint raises a federal question. A federal court must, as a matter of federal law, examine a state claim de novo to determine whether it raises a federal question. Thus, while the nature of the state tort is a matter of state law, the question of whether the state tort is sufficiently independent of the collective bargaining agreement so as to avoid removal is a question of federal law. See Lueck, 471 U.S. at 213-14, 105 S.Ct. at 1912-13. Therefore, we must now decide, as a matter of federal law, whether the plaintiffs' retaliatory discharge claims actually arise under federal law.
 
 
 35
 One method for determining whether a claim arises under federal law is to apply the "well-pleaded complaint" rule, which is one of the most basic principles of federal court jurisdiction. This rule provides that the "federal claim must generally appear on the face of the complaint unaided by any other pleadings, including a removal petition." Oglesby, 752 F.2d at 275. However, a necessary exception to the well-pleaded complaint rule is the "artful pleading" doctrine. This doctrine provides that, although a plaintiff is the "master" of his or her complaint, Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 22, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983), he or she may not purposely frame his or her action under state law and omit the federal questions that are essential to recovery. Id.; Saturday Evening Post Co. v. Rumbleseat Press, Inc., 816 F.2d 1191, 1195 (7th Cir.1987); Williams v. Caterpillar Tractor Co., 786 F.2d 928, 931 (9th Cir.1986); Mitchell, 772 F.2d at 344; Oglesby, 752 F.2d at 275.
 
 
 36
 In Martin, the defendants removed the plaintiff's suit to federal court on the basis that all of her claims arose under Sec. 301.[10] In Lingle, the defendant removed the plaintiff's suit on the basis of diversity. Under the well-pleaded complaint rule, removal would not be proper in either case, because the plaintiffs have not stated a federal claim on the face of their complaints. However, the artful pleading doctrine requires us to look more closely at the plaintiffs' allegations. See Williams, 786 F.2d at 930-33; cf. Leu v. Norfolk & Western Railway Co., 820 F.2d 825, 830 (7th Cir.1987) ("Appellants cannot, through 'artful pleading,' disguise claims that are within the jurisdictional scope of the RLA...."). After examining the plaintiffs' state claims de novo, to determine whether a federal question is raised, we conclude that the plaintiffs' claims of retaliatory discharge, and Martin's other claims, are artfully pleaded claims for wrongful discharge under the collective bargaining agreements. Therefore, removal was proper, because both complaints stated claims that arose under federal law. See Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968) ("It is thus clear that the claim under th[e] collective bargaining agreement is one arising under the laws of the United States within the meaning of the removal statute.... It likewise seems clear that this suit is within the 'original jurisdiction' of the District Court within the meaning of 28 U.S.C. Secs. 1441(a) and (b).").[11]C.
 
 
 37
 We have consistently held that claims of retaliatory discharge brought by a worker who is covered by a collective bargaining agreement are actually claims for wrongful discharge under the collective bargaining agreement. Therefore, these claims arise under federal law, and removal is proper.
 
 
 38
 In Oglesby v. RCA Corp., 752 F.2d 272 (7th Cir.1985), the plaintiff refused to perform his work because he had not been provided the necessary tools or clothing as required by OSHA. He alleged that he was discharged because of his refusal. We stated that:
 
 
 39
 [The] plaintiff has simply alleged a cause of action for wrongful discharge and if shown to be in violation of a collective bargaining agreement subject to Section 301, LMRA, the action arises under federal law and the fact that it was not characterized in the complaint as a federal claim is not determinative.
 
 
 40
 Id. at 276 (citations omitted).
 
 
 41
 In Vantine v. Elkhart Brass Mfg. Co., 762 F.2d 511 (7th Cir.1985), the employee was covered by a collective bargaining agreement that had a "just cause" provision. Vantine alleged, as have the plaintiffs here, that he was discharged in retaliation for filing a worker's compensation claim, and that this action interfered with his "employment contract rights." Id. at 515. The case was removed to the district court, because the complaint's theory of liability was based on Sec. 301. Id. at 516.
 
 
 42
 We noted in Vantine that the Indiana Supreme Court had created a tort action for retaliatory discharge for at-will employees. See id. at 517 (citing Frampton v. Central Indiana Gas Co., 260 Ind. 249, 297 N.E.2d 425 (1973)). We concluded that, "because the goals and policies of the Indiana Workmen's Compensation Act are protected by the collective bargaining agreement, Frampton does not apply to employees covered by collective bargaining agreements." Id. at 517. Although we discussed state law, we based our decision on our own review of whether the cause of action arose under state or federal law. We noted that "because an allegation for filing a workmen's compensation claim is an allegation of a breach of the collective bargaining agreement, it arises under ... [Sec. 301] rather than the Indiana Workmen's Compensation Act," id. Similarly, in this case, although the plaintiff's claim is based on a state tort, it is actually a claim for a breach of the collective bargaining agreement.
 
 
 43
 Another case from this circuit, Mitchell v. Pepsi-Cola Bottlers, Inc., 772 F.2d 342 (7th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986), involved a plaintiff's claim of "tortious termination of employment." The plaintiff argued that "his involuntary resignation claim [could] not implicate the collective bargaining agreement ... because the defendant did not discharge plaintiff, but sought to avoid the provisions of the collective bargaining agreement by forcing the plaintiff to resign involuntarily." Mitchell, 772 F.2d at 346. We concluded that plaintiff had given too narrow an interpretation to the just cause provision, and held that plaintiff's claim arose under the collective bargaining agreement, and therefore presented a federal question, making removal proper.
 
 
 44
 The case law in our circuit is clear: a claim of retaliatory discharge by a worker covered under a collective bargaining agreement with a "just cause" provision states a claim under the collective bargaining agreement. Lingle's and Martin's retaliatory discharge claims, therefore, necessarily arise under federal law. See Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (federal law governs Sec. 301 claims).
 
 
 45
 Martin's other claims also arise under the collective bargaining agreement, and therefore are removable as Sec. 301 claims. Count V alleges an interference with both her employment rights and contract of employment. Counts VI through XI allege that the defendants maintained a defective discharge procedure. We reject Martin's claim that an employment contract, separate and apart from the collective bargaining agreement, existed between her and the defendants. The only contract controlling her employment rights is the collective bargaining agreement. Thus, we conclude that Count V is artfully pleaded and arises under Sec. 301. Counts VI through XI state claims that are subsumed by the discharge procedures of the collective bargaining agreement; therefore, these claims also arise under Sec. 301 and are properly removable. All of the counts raised in Martin's complaint, therefore, require a determination of whether, under the collective bargaining agreement, she was discharged for just cause. See Leu v. Norfolk & Western Railway Co., No. 86-1377, 820 F.2d 825, 830 (7th Cir.1987) ("The appellants cannot escape the exclusive governance of the RLA by articulating their claim in terms of a state tort action."). Thus, federal law is controlling, and the suit was properly removed.
 
 
 46
 We conclude by holding that the first issue in a Sec. 301 removal case is whether federal law provides a plaintiff with a cause of action to remedy the wrongs he or she asserts. See Mitchell, 772 F.2d at 344; Oglesby, 752 F.2d at 275. Once a court determines that a plaintiff's complaint--either on its face or as artfully pleaded--states a claim for a federal remedy, as in these cases, then the district court may conclude that removal is proper. The next step is for the court to determine whether or not the suit is preempted.
 
 IV.
 A.
 
 47
 The Supreme Court has articulated several distinct preemption principles in the context of the labor laws. One principle, the Garmon rule, prohibits the states from regulating activities that are protected, or prohibited, or arguably so affected, by the NLRA. See San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Garmon preemption protects the primary jurisdiction of the National Labor Relations Board. A similar preemption principle precludes state regulation of conduct that Congress intended to be left unregulated. See Machinists v. Wisconsin Employment Relations Commission, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976).
 
 
 48
 We are concerned here with a preemption principle distinct from those above--the preemptive effect of Sec. 301. See Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). This last type of preemption is based upon the necessary federal protection of a uniform body of federal labor law. Local 174, Teamsters v. Lucas Flour, 369 U.S. 95, 103-04, 82 S.Ct. 571, 576-77, 7 L.Ed.2d 593 (1962). Consequently, unlike Garmon preemption, which balances state and federal interests, Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 n. 9, 105 S.Ct. 1904, 1913 n. 9, 85 L.Ed.2d 206 (1985), Sec. 301 preemption requires that "incompatible doctrines of local law must give way to principles of federal labor law," Lucas Flour, 369 U.S. at 102, 82 S.Ct. at 576 (footnote omitted); see also Lueck, 471 U.S. at 212-13, 105 S.Ct. at 1912. The cases applying other labor law preemption principles are, therefore, irrelevant to our determination here. See Gibson v. AT & T Technologies, Inc., 782 F.2d 686, 688-89 (7th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986).
 
 
 49
 The Supreme Court has made clear that where the right to recovery depends on an interpretation of a collective bargaining agreement, Sec. 301 requires federal law to govern. Lincoln Mills, 353 U.S. at 456, 77 S.Ct. at 918. In Lucas Flour, the Court stated that the "dimensions of Sec. 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute." Lucas Flour, 369 U.S. at 103, 82 S.Ct. at 576. The Court thought a uniform federal law was required because:
 
 
 50
 The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation.
 
 
 51
 Lueck, 471 U.S. at 210, 105 S.Ct. at 1910-11 (quoting Lucas Flour, 369 U.S. at 103-04, 82 S.Ct. at 577).
 
 
 52
 A recent Supreme Court decision that has addressed the issue of the preemptive effect of Sec. 301 is Lueck, supra.[12] In Lueck, the employee alleged that the employer had hindered his receipt of insurance proceeds as provided for in the collective bargaining agreement. The Court, in responding to the employee's argument that his claim was not preempted, stated that, "[w]ere state law allowed to determine the meaning intended by the parties in adopting a particular phrase or term, all the evils addressed in Lucas Flour would recur." Lueck, 471 U.S. at 211, 105 S.Ct. at 1911. Building upon its decision in Lucas Flour, the Court concluded that:
 
 
 53
 If the policies that animate Sec. 301 are to be given their proper range, however, the preemptive effect of Sec. 301 must extend beyond suits alleging contract violations. These policies require that 'the relationships created by [a collective-bargaining] agreement' [be] defined by application of an evolving federal common law grounded in national labor policy.
 
 
 54
 Lueck, 471 U.S. at 210-11, 105 S.Ct. at 1911 (citation omitted) (brackets in original).[13]
 
 
 55
 Recently, the Supreme Court in International Brotherhood of Elec. Workers v. Hechler, --- U.S. ----, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987), has reaffirmed Lueck and Lucas Flour. In Hechler, the Court was faced with the issue of whether a union employee's state tort claim that her union had breached its duty of care to provide her with a safe working place was sufficiently independent of the collective bargaining agreement to avoid preemption. The Court concluded that it would have to interpret the collective bargaining agreement to determine whether the union had assumed that duty. The Court stated:
 
 
 56
 In order to determine the Union's tort liability ... a court would have to ascertain, first, whether the collective bargaining agreement in fact placed an implied duty of care on the Union to ensure that Hechler was provided a safe workplace, and, second, the nature and scope of that duty, that is, whether, and to what extent, the Union's duty extended to the particular responsibilities alleged by respondent in her complaint. Thus, in this case, as in Allis-Chalmers, it is clear that "questions of contract interpretation ... underlie any finding of tort liability." 471 U.S. at 218 [105 S.Ct. at 1915]. The need for federal uniformity in the interpretation of contract terms therefore mandates that here, as in Allis-Chalmers, respondent is precluded from evading the pre-emptive force of Sec. 301 by casting her claim as a state-law tort action.
 
 
 57
 Hechler, --- U.S. at ----, 107 S.Ct. at 2168 (footnote omitted). Compare Caterpillar Inc. v. Williams, --- U.S. ----, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (employees' claim that employer breached individual employment contract did not implicate collective bargaining agreement and was not preempted).
 
 B.
 
 58
 Plaintiffs' claims for retaliatory discharge depend on an analysis of the terms of the collective bargaining agreements. Moreover, Martin's other claims, those in counts V through XI of her complaint, are also inextricably intertwined, by their own terms, with her collective bargaining agreement. Both plaintiffs are seeking redress for a right that derives from the collective bargaining agreement. In Graf, we held that where a "worker is covered by a collective bargaining contract and therefore has a potential federal remedy, judicial or arbitrable, ... that remedy is exclusive; the worker has no state remedies." Graf, 790 F.2d at 1346;[14] see also Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968). That holding applies in this case as well, and is supported not only by Lueck but by the recent decisions in this circuit addressing the preemptive effect of Sec. 301. The plaintiffs have, therefore, asserted state claims that are preempted by Sec. 301.
 
 
 59
 The question of whether the tort of retaliatory discharge is preempted by the federal labor laws has been at issue in several recent cases in this court. See, e.g., Graf v. Elgin, Joliet & Eastern Railway Co., 790 F.2d 1341 (1980) (A pendent state claim of retaliatory discharge is preempted by the Railway Labor Act.); Vantine v. Elkhart Brass Mfg. Co., 762 F.2d 511 (7th Cir.1985) (A claim for retaliatory discharge under Indiana law may not be asserted by workers covered under a collective bargaining agreement.). Moreover, the district courts in this circuit have been faced with this issue with increased frequency--although they have arrived at differing conclusions. Compare Clark v. Momence Packing Co., 637 F.Supp. 16 (C.D.Ill.1985), aff'd 828 F.2d 22 (7th Cir.1987) (finding the state tort of retaliatory discharge preempted) and Waycaster v. AT & T Technologies, 636 F.Supp. 1052 (N.D.Ill.1986), appeal docketed, No. 86-1547 (7th Cir.1986) (same) and Hughes v. Pittsburgh Testing Lab, 624 F.Supp. 54 (N.D.Ill.1985) (same) and Lingle v. Norge Division of Magic Chef, Inc., 618 F.Supp. 1448 (S.D.Ill.1985) (same) with La Buhn v. Bulkmatic Transport Co., 644 F.Supp. 942, 945 (N.D.Ill.1986), appeal docketed, No. 86-2664 (7th Cir.1986) (no preemption of the worker's tort of retaliatory discharge claim for filing a safety complaint) (citing Orsini v. Echlin, Inc., 637 F.Supp. 38 (N.D.Ill.1986)) and Daugherty v. Lucky Stores, Inc., 603 F.Supp. 975 (C.D.Ill.1985) (same).
 
 
 60
 The recent Seventh Circuit opinions that have addressed the preemptive effect of Sec. 301 are consistent. In Oglesby v. RCA Corp., 752 F.2d 272 (7th Cir.1985), for example, this court held that the plaintiff's claim for wrongful discharge was preempted by the collective bargaining agreement.[15] In another case involving Indiana law, Vantine v. Elkhart Brass Mfg. Co., 762 F.2d 511 (7th Cir.1985), we held that a claim for retaliatory discharge was an "allegation of a breach of the collective bargaining agreement," and consequently the claim was preempted by under Sec. 301. Vantine, 762 F.2d at 517.
 
 
 61
 In another case, also decided after Lueck, we held that the plaintiff's "involuntary discharge" claim was preempted by Sec. 301. Mitchell v. Pepsi-Cola Bottlers Inc., 772 F.2d 342 (7th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986). We then stated that the "federal interest in uniformity of result under section 301 has produced a multitude of cases foreclosing suits based on state common law when the disputes underlying those suits turn on the terms of an agreement between parties to a labor contract," id.
 
 
 62
 In Gibson v. AT & T Technologies, 782 F.2d 686 (7th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986), the plaintiffs brought suit under a state law fraud theory. They alleged that the defendant had improperly deprived them of a layoff allowance that was provided for in the collective bargaining agreement. Relying on Oglesby, we held that the plaintiffs' action arose from the collective bargaining agreement, and therefore, was controlled by federal law. Gibson, 782 F.2d at 688 (citing Lueck ).
 
 
 63
 Most recently, we reiterated our views in Graf v. Elgin, Joliet & Eastern Railway Co., 790 F.2d 1341 (7th Cir.1986). In Graf, we relied on Oglesby for the proposition that "there is overwhelming support in the case law for complete preemption in collective bargaining cases." Graf, 790 F.2d at 1346. Although Graf was decided under the Railway Labor Act, we have previously held that the NLRA, including Sec. 301 of the LMRA, has the same preemptive effect as the RLA. See Lancaster v. Norfolk & Western Railway Co., 773 F.2d 807, 816-17 (7th Cir.1985), cert. denied, --- U.S. ----, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987).[16] Graf is, therefore, applicable to our cases.
 
 
 64
 Our holding is, therefore, mandated by prior cases in this circuit. We are mindful of the Supreme Court's admonition that not "every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by Sec. 301." Lueck, 471 U.S. at 220, 105 S.Ct. at 1916. Although it is also clear that the scope of Sec. 301 preemption must be determined on a case-by-case basis, id., we conclude that, in these cases, the plaintiffs' claims of retaliatory discharge are substantially dependent upon an analysis of the terms of the collective bargaining agreements. Therefore, these claims must be treated as Sec. 301 claims that preempt state law.
 
 
 65
 The plaintiffs argue that the definition of retaliatory discharge in Illinois does not expressly require an interpretation of a collective bargaining agreement. They argue, therefore, that the tort is not inextricably intertwined with the federal labor laws. However, this reasoning is inverted; the just cause provision in the collective bargaining agreement may well prohibit such retaliatory discharge. It is the scope of the contract that must be analyzed initially. To conclude otherwise, by analyzing the state tort first, would allow the states, through the guise of the worker's compensation laws, to circumvent the arbitration and grievance procedures envisioned by Congress as exclusive. See Lueck, 471 U.S. at 210-11, 105 S.Ct. at 1911; Twitchell, 54 Geo.Wash.L.Rev. at 814 n. 8.
 
 
 66
 If the tort of retaliatory discharge were not preempted by Sec. 301, then workers covered by collective bargaining agreements would be able to bring their claims in the state courts. However, a state court would be deciding precisely the same issue as would an arbitrator: whether there was "just cause" to discharge the worker. This also would hold true in a case involving a dual motive discharge (i.e., where an employer fires an employee both because of the employee's poor attendance record, and because the employee has filed a worker's compensation claim). In such a case, the state court would have to determine if the employee would have been discharged absent the state-law-proscribed motive, which in turn would depend on whether the nonproscribed motive constituted "just cause" under the collective bargaining agreement. Because a claim of retaliatory discharge clearly implicates the collective bargaining agreement, these claims should be resolved, as Congress clearly intended, by the grievance procedures in the agreements. Therefore, the state tort of retaliatory discharge is inextricably intertwined with the collective bargaining agreements here, because it implicates the same analysis of the facts as would an inquiry under the just cause provisions of the agreements.[17]
 
 
 67
 The plaintiffs also argue that the state has an interest in deterring retaliatory discharge, and that permitting plaintiffs to obtain punitive damages will facilitate this goal. We do not believe that the mere availability of punitive damages in state court should prevent preemption. Federal labor law is structured to make whole a worker who was unjustly fired. After a favorable arbitration decision, a worker can be reinstated with full back pay. If the collective bargaining agreement permits, an employee may even obtain punitive damages. Howard P. Foley Co. v. International Brotherhood of Elec. Workers, Local 639, 789 F.2d 1421, 1423-24 (9th Cir.1986); see Miller Brewing Company v. Brewery Workers Local Union No. 9, 739 F.2d 1159, 1162-63 (7th Cir.1984), cert. denied, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985). Unlike a successful arbitration claim, a successful state tort claim does not ensure reinstatement. The mere possibility of punitive damages in a state court does not justify a holding that the tort involved here is not preempted. In the long run, more employers will be deterred from improperly discharging their employees by a strong arbitration system rather than by the mere possibility of punitive damages.
 
 
 68
 Finally, we note that a conclusion that state retaliatory discharge claims are not preempted would be detrimental to unions. If a state statute or common law gave all workers protection from unjustified discharges, then one of the major recruiting points of union organizers--that unionization will protect the worker against arbitrary discharge--would disappear. The effect of such a state system would be to make the worker less dependent on the arbitration remedies created by the collective bargaining contract.
 
 
 69
 We also conclude that Martin's other claims in counts V through XI, which concern either an alleged interference with the employment contract or an allegedly faulty dispute resolution system, are dependent upon the terms of the collective bargaining agreement. The claims in these last counts, like the retaliatory discharge claims, are inextricably intertwined with the collective bargaining agreement.
 
 C.
 
 70
 We are not the only circuit that has faced the issue of the preemptive effect of Sec. 301 on various state claims, including the tort of retaliatory discharge. The Second, Third, and Tenth Circuits have concluded that Sec. 301 does not preempt the state tort of retaliatory discharge; the Eighth Circuit has held that Sec. 301 preempts such cases, while the direction of the Ninth Circuit cases is towards preemption. Although the other circuits have split over whether Sec. 301 preempts these state law claims, we conclude that the better reasoned cases support our result.
 
 
 71
 In Peabody Galion v. A.V. Dollar, 666 F.2d 1309 (10th Cir.1981), the plaintiffs, who were covered by a collective bargaining agreement, brought a retaliatory discharge suit against their employer. The court held that their claim, which was authorized under a state statute, was not preempted by the NLRA.
 
 
 72
 We decline to follow Peabody Galion. First, we note that it was decided prior to the Supreme Court's recent decision in Allis-Chalmers v. Lueck, in which the Court reaffirmed the broad preemptive effect of Sec. 301. Second, we do not agree with the Tenth Circuit's analysis of the preemption issue. The Tenth Circuit applied preemption principles that were designed to protect the NLRB's primary jurisdiction, and not the preemption principles that govern Sec. 301 cases. We do not believe that the scope of Sec. 301 preemption should be determined under a balancing test that was adopted in cases that were concerned with the NLRB's primary jurisdiction. Finally, the Peabody Galion court did not believe that permitting workers covered by collective bargaining agreements to file retaliatory discharge claims would frustrate federal labor policy. Id. at 1317. In light of Lueck, we strongly disagree. We believe that permitting these suits will frustrate the federal policy favoring arbitration.
 
 
 73
 We also decline to follow a recent Third Circuit case, which has commented, in a footnote, on the preemptive effect of Sec. 301 on a claim of retaliatory discharge. See Herring v. Prince Macaroni of New Jersey, Inc., 799 F.2d 120, 124 n. 2 (3d Cir.1986). The Herring court concluded that Sec. 301 did not preempt the retaliatory discharge claim, "[b]ecause worker's compensation rights are rooted in state law, rather than the collective bargaining agreement, and because the cause of action in question is part-and-parcel of the state's worker's compensation scheme." Id. at 124 n. 2. We do not agree with this reasoning, in part because the court relied on Peabody Galion. Moreover, that a claim is a part of a state's regulatory scheme is of no import in the face of a superior federal law. Because Sec. 301 preemption arises from Congress' plenary power under the Commerce Clause, Congress may preempt any state law that conflicts with a valid exercise of that power. The ultimate question is whether "resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a Sec. 301 claim ... or dismissed as pre-empted by federal labor-contract law." Lueck, 471 U.S. at 220, 105 S.Ct. at 1916.
 
 
 74
 The Second Circuit has concluded that a claim of retaliatory discharge brought by an employee covered by a collective bargaining agreement is not preempted by Sec. 301. See Baldracchi v. Pratt & Whitney, 814 F.2d 102 (2d Cir.1987). In Baldracchi, the plaintiff alleged that she was discharged, in violation of a state statute, in retaliation for filing a worker's compensation claim. The Second Circuit concluded that because her claim was based upon a state statute, the plaintiff's claim was independent of the collective bargaining agreement. The court also concluded that the claim did not require an interpretation of the "just cause" provision. Finally, the court relied on reasoning similar to the Herring court's logic, which we believe to be erroneous, that even if the collective bargaining agreement permitted retaliatory discharge, the statutory rights could not be waived, so that the agreement would have no effect on the plaintiff's statutory rights.
 
 
 75
 We reject the Second Circuit's analysis of this issue.[18] The Second Circuit's analysis fails to take into account the fact that Congress can preempt a state statute. Thus, if a decision on the plaintiff's claim could be decided under the just cause provision of the collective bargaining agreement, then it is immaterial that the plaintiff's claim could also be decided with reference to the state statute. In fact, the Baldracchi court admitted that in determining the plaintiff's relief, reference would have to be made to the agreement. Id. at 106. We believe that the court in Baldracchi missed the real issue: that if resolution of a plaintiff's claim is substantially dependent on an interpretation of a collective bargaining agreement, then contrary state law--whether statutory or common law--must fall.
 
 
 76
 The Ninth Circuit has decided several cases concerning the preemptive effect of Sec. 301 on various state torts. Although these cases are perhaps inconsistent, the more recent Ninth Circuit opinions support our view.
 
 
 77
 The Ninth Circuit's first major statement on the preemptive effect of Sec. 301 was in Garibaldi v. Lucky Food Stores, Inc., 726 F.2d 1367 (9th Cir.1984), cert. denied, 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985). There the court held that the plaintiff's state law cause of action for wrongful discharge, which was created to preserve the state's public policy, was not preempted by Sec. 301.
 
 
 78
 The Ninth Circuit subsequently decided Olguin v. Inspiration Consolidated Copper Co., 740 F.2d 1468 (9th Cir.1984), which appears to have limited the holding in Garibaldi. In Olguin, the plaintiff alleged that he was fired in retaliation for filing safety complaints against his employer under OSHA regulations. See also Scott v. Machinists Automotive Trades District Lodge No. 190, 815 F.2d 1281, 1283 (9th Cir.1987). The court distinguished Garibaldi and found that Olguin's claim was preempted by Sec. 301 because his remedies were provided by his employment contract. The court seemed to undermine Garibaldi when it stated that the "tort of wrongful discharge has developed in some states to protect employee job security despite the historical common law rule of employment at will. See Garibaldi, 726 F.2d at 1374. As we have indicated, this tort is supplanted by the provisions of the collective bargaining agreement." Olguin, 740 F.2d at 1475.
 
 
 79
 Several recent cases from the Ninth Circuit have reinforced the Olguin decision. In Williams v. Caterpillar Tractor Co., 786 F.2d 928 (9th Cir.), aff'd, --- U.S. ----, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), the Ninth Circuit found that the plaintiffs' state law claims for breach of an employment contract were not preempted. Williams is not directly on point, because the plaintiff's breach of contract suit arose from contracts allegedly made during a period when the plaintiffs were not part of the bargaining unit, and thus the contracts were not within the scope of Sec. 301. See Caterpillar Inc., --- U.S. at ---- n. 9, 107 S.Ct. at 2431 n. 9. What is relevant, however, is that the Ninth Circuit in Williams seemed to read Olguin broadly, stating that "Olguin's wrongful discharge claim fits neatly within the scope of the 'just cause' discharge provisions of the collective bargaining agreement," Williams, 786 F.2d at 937. The Williams court also expressly questioned the rationale of Garibaldi's preemption discussion. See id. at 933-35. Another recent case with facts similar to Garibaldi, but reaching a different result, has questioned the conclusion in Garibaldi. See DeSoto v. Yellow Freight Systems, 811 F.2d 1333 (9th Cir.1987).
 
 
 80
 Similarly, the Ninth Circuit in Bale v. General Telephone Co. of California, 795 F.2d 775 (9th Cir.1986),[19] concluded that Sec. 301 preempted various state claims, and cited Olguin for the proposition that federal law preempts state tort claims when those claims are really claims alleging violations of the collective bargaining agreement. Id. at 779. We conclude that the Ninth Circuit cases which were decided after Lueck--Williams, Bale, and DeSoto --more accurately point to the direction in which that circuit is moving, and support our holding. Thus, we do not believe that our holding is in conflict with the recent decisions of the Ninth Circuit.
 
 
 81
 A recent case, directly on point, that has addressed the preemptive effect of Sec. 301 on a retaliatory discharge claim is Johnson v. Hussmann Corp., 805 F.2d 795 (8th Cir.1986). In Johnson, the employee suffered an on the job injury. He was later discharged for allegedly violating posted safety rules. Johnson was covered by a collective bargaining agreement that prohibited discharge except for just cause, and which also contained arbitration and grievance procedures. Subsequently, after filing a grievance, Johnson filed suit in state court alleging, inter alia, retaliatory discharge for filing a worker's compensation claim. The Eighth Circuit affirmed both the district court's refusal to remand to state court and its grant of summary judgment for the defendants. The court concluded that the employee's claims were artfully pleaded and were really claims for wrongful discharge in violation of the collective bargaining agreement. Thus, the claims were substantially dependent upon an analysis of the agreement, and were, therefore, preempted by Sec. 301. See id. at 797.
 
 D.
 
 82
 In this case we decide that, although federal law does not preempt all state law claims involving a provision of a collective bargaining agreement, where a plaintiff makes a claim for wrongful discharge, this claim necessarily implicates a just cause provision. Furthermore, we conclude that when a worker, who is covered under a collective bargaining agreement, claims that a defendant has interfered with her employment contract, or has maintained a defective dispute resolution procedure, these claims also stem directly from the collective bargaining agreement, and are therefore preempted.V.
 
 
 83
 The final step is for this court to determine the proper disposition of the plaintiffs' suit. We conclude that as a matter of federal law, the plaintiffs' failure to exhaust their remedies under the collective bargaining agreement requires us to affirm both district court orders dismissing the plaintiffs' suit.
 
 
 84
 "The federal policy favoring private arbitration of labor disputes has induced courts to establish a requirement that employees suing under section 301 first exhaust their administrative remedies." Mitchell, 772 F.2d at 345 (citing Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965)); D'Amato v. Wisconsin Gas Co., 760 F.2d 1474, 1488 (7th Cir.1985); Huffman v. Westinghouse Electric Corp., 752 F.2d 1221, 1223 (7th Cir.1985). Therefore, an employee must attempt to use the grievance procedures set forth in the collective bargaining agreement. Maddox, 379 U.S. at 652, 85 S.Ct. at 616.
 
 
 85
 In D'Amato, supra, we stated that an employee must exhaust the grievance and arbitration provisions of the collective bargaining agreement before he or she institutes suit, if those procedures are intended to be the exclusive remedy for breach of contract claims. D'Amato, 760 F.2d at 1488. We then discussed several exceptions to this rule. The first exception is where "the conduct of the employer amounts to a repudiation" of the agreement procedures so that the employer is estopped by this conduct from asserting unexhausted agreement procedures as a defense to the suit. Id. (citing Vaca v. Sipes, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967)); see also Bailey v. Bicknell Minerals, Inc., 819 F.2d 690, 692 (1987). The second exception, the futility exception, provides that an employee need not resort to the grievance procedures if such action would be futile. D'Amato, 760 F.2d at 1488. For example, this occurs "where those who would pass on the claims are the very individuals charged with violating the complaining employee's rights." Id. (citing Glover v. St. Louis-San Francisco Railway Co., 393 U.S. 324, 331, 89 S.Ct. 548, 552, 21 L.Ed.2d 519 (1969)). The last exception excuses a worker from complying with the grievance procedures when a union is relieved, for some reason, of any duty to represent the worker. Id.
 
 
 86
 The district court in Martin found that although the plaintiff never filed a formal grievance, a meeting was scheduled to discuss her discharge. Martin failed to attend that meeting. The plaintiff argued in the district court that she was not obligated to exhaust these procedures, because she fell within the second exception outlined above.[20] Plaintiff clearly did not, however, prove that, in this case, the initiation of formal grievance procedures would have been futile.
 
 
 87
 In Lingle, the district court dismissed the plaintiff's claim, because she failed to exhaust her administrative remedies. The court reasoned that the grievance procedures in the contract were meant to be exclusive, that the union did not breach its duty of fair representation, and that the plaintiff's claim did not fall within any of the exceptions outlined in D'Amato.[21]
 
 
 88
 We agree with the lower court that in both cases the plaintiffs impermissibly failed to exhaust the grievance procedures under the collective bargaining agreements. Each agreement contained grievance and arbitration procedures that were intended to constitute the exclusive remedy for a breach of the contract. Federal policy favors the private arbitration of labor disputes. This policy requires that employees suing under Sec. 301 exhaust their administrative remedies. Mitchell, 772 F.2d at 345. Thus, we conclude that "federal law obligated plaintiff[s] to exhaust [their] contract remedies before bringing suit under section 301." Id. at 347.
 
 VI.
 
 89
 We hold that a district court must, prior to determining whether a state law claim is preempted, initially decide whether it has jurisdiction. We conclude that here all of the plaintiffs' claims arose under the collective bargaining agreements and, therefore, were removable under 28 U.S.C. Sec. 1441. The next step is to determine whether federal law preempts the state claims. Although we note that Sec. 301 does not preempt all state law claims that might involve a provision of a collective bargaining agreement, we hold that all of the plaintiffs' claims are claims for breaches of the just cause provisions of the collective bargaining agreements and thus are preempted. Finally, we note that federal labor law strongly favors the use of the grievance and arbitration mechanisms that are contained in a collective bargaining agreement. In this case, both plaintiffs failed to exhaust the grievance procedures that were meant to be exclusive. Because the plaintiffs have not demonstrated that they should be exempted from this exhaustion requirement, we hold that the disposition of both cases was proper. The judgments of the district court in both Martin and Lingle are AFFIRMED.
 
 
 90
 RIPPLE, Circuit Judge, with whom, CUDAHY, Circuit Judge, joins, dissenting.
 
 
 91
 In Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948), the Supreme Court of the United States, dealing with a delicate question of federalism under the full faith and credit clause, wrote: "[T]here are few areas of the law in black and white. The greys are dominant and even among them the shades are innumerable." Id. at 545, 68 S.Ct. at 1216. This court's approach to the federalism question posed by this case evidences a decidedly different approach. Not only does the court ignore the grey areas on the legal landscape, but it even refuses to draw a "black and white" line between federal and state authority. Instead, it opts, as a practical matter, for a single-colored portrait of absolute federal authority. Because such an approach is required neither by the Constitution nor by the congressional mandate of section 301, I respectfully dissent.
 
 A.
 
 92
 The court has no difficulty finding, in the dicta of its recent cases, support for its absolutist approach. See, e.g., Graf v. Elgin, J. & E. Ry. Co., 790 F.2d 1341, 1346 (7th Cir.1986).[1] However, it can find no support for such trivialization of important state interests in the controlling precedent of the Supreme Court of the United States. And, as an intermediate appellate court in the federal system, it is that precedent and not our own predilections which must control.
 
 
 93
 As the majority acknowledges, the most recent--and most pertinent--precedent is Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In that case, the plaintiff worker was covered by a collective bargaining agreement that contained a provision for disability benefits for non-occupational illnesses and injuries for all employees who were represented by the union. The plaintiff, after suffering a covered injury, had a dispute with Allis-Chalmers with respect to payment of claims. Despite the availability of a grievance arbitration procedure, the plaintiff brought a tort action against his employer in Wisconsin state court. He alleged bad faith handling of his insurance claim. Id. at 206, 105 S.Ct. at 1908. The Wisconsin Supreme Court reasoned that the tort of bad faith, while arising out of a contractual relationship, was independent of that contract and thus not a section 301 suit.
 
 
 94
 The Supreme Court of the United States reversed. The Court began its analysis by noting that, ever since its decision in Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), it has been established that "Sec. 301 expresses a federal policy that the substantive law to apply in Sec. 301 cases 'is federal law, which the courts must fashion from the policy of our national labor laws.' " 471 U.S. at 209, 105 S.Ct. at 1910 (quoting Lincoln Mills, 353 U.S. at 456, 77 S.Ct. at 918). Therefore, "in enacting Sec. 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." Teamsters v. Lucas Flour Co., 369 U.S. 95, 104, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962). The Court in Allis-Chalmers further noted that:
 
 
 95
 [t]he interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or a suit alleging liability in tort.
 
 
 96
 471 U.S. at 211, 105 S.Ct. at 1911. Any other course, suggested the Justices, would create uncertainty as to the contractual rights of the parties and "disputes as to the nature of the agreement would proliferate." Id. As noted by the Court:
 
 
 97
 Since nearly any alleged willful breach of contract can be restated as a tort claim for breach of a good-faith obligation under a contract, the arbitrator's role in every case could be bypassed easily if Sec. 301 is not understood to pre-empt such claims. Claims involving vacation or overtime pay, work assignment, unfair discharge--in short, the whole range of disputes traditionally resolved through arbitration--could be brought in the first instance in state court by a complaint in tort rather than in contract. A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness....
 
 
 98
 Id. at 219-20, 105 S.Ct. at 1915-16.
 
 
 99
 At the same time, however, the Court in Allis-Chalmers quite pointedly noted that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by Sec. 301 or other provisions of the federal labor law." Id. at 211, 105 S.Ct. at 1911. Indeed, noted the Court:
 
 
 100
 [c]learly, Sec. 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the pre-emptive effect of Sec. 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.
 
 
 101
 Id. at 212, 105 S.Ct. at 1912. The analysis must focus, said the court, on "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If state tort law purports to define the meaning of the contract relationship, that law is pre-empted." Id. at 213, 105 S.Ct. at 1912 (emphasis supplied).
 
 
 102
 In Allis-Chalmers, the Supreme Court concluded that the Wisconsin court's determination that the tort claim was independent of the contract claim meant only that the implied duty to act in good faith was different from the contractual duty to pay. However, noted the Supreme Court, both duties ultimately depend upon the terms of the contract. Both claims "are tightly bound with questions of contract interpretation that must be left to federal law." Id. at 216, 105 S.Ct. at 1914. Since resolution of the state-law claim is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a Sec. 301 claim, or dismissed as pre-empted by federal labor-contract law." Id. at 220, 105 S.Ct. at 1916 (citation omitted).
 
 
 103
 The Supreme Court has recently reaffirmed that the holding of Allis-Chalmers has "precise limits." In International Bhd. of Elec. Workers v. Hechler, --- U.S. ----, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987), Justice Blackmun, writing for the Court, noted:
 
 
 104
 The Court took care in Allis-Chalmers to define the precise limits of its holding. The rule there set forth is that, when a state-law claim is substantially dependent on analysis of a collective-bargaining agreement, a plaintiff may not evade the pre-emptive force of section 301 of the LMRA by casting the suit as a state-law claim. 471 U.S., at 220 [105 S.Ct., at 1915]. The Court emphasized, however: "In extending the pre-emptive effect of section 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Id., 471 U.S. at 212, 105 S.Ct. at 1912.
 
 
 105
 Id. --- U.S. at ---- n. 3, 107 S.Ct. at 2166 n. 3; see also Caterpillar Inc. v. Williams, --- U.S. ----, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).
 
 B.
 
 106
 As noted above, this court--as an intermediate appellate tribunal in the federal system--has a limited role. It must apply the analysis of Allis-Chalmers to the cases before it. It must determine "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted." 471 U.S. at 213, 105 S.Ct. at 1912.
 
 
 107
 When measured against this standard, cases involving retaliatory discharge for filing workers' compensation claims are very different from the situation in Allis-Chalmers. The plaintiffs assert no right under the collective bargaining agreement. Rather, they assert that the employer cannot, in violation of state law, retaliate against them for applying for a workers' compensation benefit provided by state law. This right is hardly "inextricably intertwined with consideration of the terms of the labor contract." Id. Indeed, it is quite distinct from the rights established by the contract. It is grounded in state law; it does not depend on the rights established by contract; it does not require that reference even be made to the contract. By bringing these actions, the plaintiffs do not circumvent the congressional directive that "federal law govern the meaning given contract terms." Id. at 218-19, 105 S.Ct. at 1914-15.
 
 
 108
 Today, the majority simply fails to realize that Allis-Chalmers requires a far more focused analysis than the one undertaken by the court. We are not asked in this case to determine whether all state law claims for wrongful discharge are within the preemptive ambit of Sec. 301. In analyzing the preemptive effect of Sec. 301, the general tort of wrongful discharge must be distinguished from the tort of retaliatory discharge for having sought the protection of a state's workers' compensation scheme. In the general wrongful discharge claim, the cause of action may well be premised on activity directly covered by the collective bargaining agreement. See, e.g., Bale v. General Tel. Co. of Cal., 795 F.2d 775, 780 (9th Cir.1986). However, in the present retaliatory discharge claim, the cause of action arises from the state's important public policy interest--independent of the collective bargaining agreement--in preserving its workers' compensation system.[2] A state has a strong interest in protecting its employees through its workers' compensation scheme and can, if it chooses, protect those workers from retaliation for seeking assistance from this program. Indeed, it would be "inconsistent with congressional intent," Allis-Chalmers, 471 U.S. at 212, 105 S.Ct. at 1912, to preempt state regulation of this sort which, while furthering an important state interest, is neither "inextricably intertwined with consideration of the terms of the labor contract," id. at 213, 105 S.Ct. at 1912, nor "purports to define the meaning of the contract relationship." Id. Indeed, "Sec. 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." Id. at 212, 105 S.Ct. at 1912. Nor can the possibility that, on a certain number of instances, the state court may have to determine whether the discharge was based on the filing of a workers' compensation claim or upon other grounds justify wholesale preemption of state law. As Chief Judge Feinberg pointed out in Baldracchi v. Pratt & Whitney Aircraft Div., United Technologies Corp., 814 F.2d 102 (2d Cir.1987):
 
 
 109
 [The defendant employer] would have to satisfy the trier of fact in the state court only that it fired [the employee] for a reason unrelated to her filing a workers' compensation claim. Though it would have to show that the reason was more than a pretext, it would not have to establish that the grounds for [the employee's] termination amounted to "just cause" under the collective bargaining agreement.
 
 
 110
 Id. at 105. In order to prevail against the state claim, the defendant employer need only show that the discharge was for a reason unrelated to the filing of a workers' compensation claim. The legitimacy or illegitimacy of that other reason is not within the cognizance of the court.
 
 
 111
 In short, the state law-based right asserted here is neither "founded directly on rights created by [a] collective-bargaining agreement[ ] ... [or] ... 'substantially dependent on analysis of a collective-bargaining agreement.' " Caterpillar Inc., --- U.S. at ----, 107 S.Ct. at 2431 (quoting Electrical Workers v. Hechler, 481 U.S. ----, ---- n. 3, 107 S.Ct. 2161, 2166 n. 3, 95 L.Ed.2d 791 (1987)).
 
 C.
 
 112
 The court's failure to undertake a focused inquiry, rigorously tailored to the mandate of Allis-Chalmers that preemption is to turn on whether the matter is "inextricably intertwined with consideration of the terms of the labor contract," 471 U.S. at 213, 105 S.Ct. at 1912, will create many theoretical and practical difficulties if left undisturbed. As the majority quite frankly admits, its broad-brushed preemption analysis causes it to part company with most of the circuits which have addressed this question[3] and with the supreme court of a state within the circuit.[4]
 
 
 113
 On a doctrinal level, the bench and bar of this circuit will indeed find it difficult to determine, in any principled fashion, what limitations, if any, now exist on the preemptive ambit of section 301. All we are told is that, no matter how distinct the state interest may be from the terms of the collective bargaining agreement, no matter how simple a matter it might be for a state court to determine whether the discharge was in retaliation for exercising independently-based state rights, the mere existence of a "just cause" provision in the labor contract--no matter how it has been administered or interpreted--precludes state enforcement of important state governmental interests.
 
 
 114
 This decision will, of course, also create significant strains in the administration of justice within Illinois. The Supreme Court of Illinois had declared that it is the public policy of Illinois to permit its citizens--those covered by a collective bargaining contract as well as those who are not--to bring a suit for retaliatory discharge when they are fired because they have claimed the protection of a state right to workers' compensation. Now, an intermediate federal appellate court, relying upon no explicit congressional mandate and no direct Supreme Court precedent (indeed some indication to the contrary),[5] has chosen to frustrate that state choice.
 
 Conclusion
 
 115
 Careful attention to federalism concerns--constitutionally or statutorily based--rarely permit uncomplicated legal distinctions. However, we have come to accept these "complications" as the price for the orderly diffusion of power. See Granberry v. Greer, --- U.S. ----, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987) (complications arising from federalism concerns in habeas cases). Today, the court has failed to accept that responsibility and opted for a "quick fix." I respectfully dissent.
 
 
 
 [1]
 Section 301(a) broadly vests jurisdiction in the federal courts over all suits for "violation[s] of contracts between an employer and a labor organization representing employees in an industry affecting commerce...." 29 U.S.C. Sec. 185(a) (1982). Jurisdiction is bestowed "without respect to the amount in controversy or without regard to the citizenship of the parties." Id
 
 
 [2]
 Article 26.2 of Lingle's collective bargaining agreement provides in part:
 [T]he right of the employer to discharge or suspend an employee for just cause is recognized.
 
 
 [3]
 Article XVI of Martin's collective bargaining agreement provides in part:
 No employee who has completed the probationary period and attained regular full time status shall be discharged or disciplined except for just cause.
 
 
 [4]
 The court noted that:
 [T]he legislature enacted the workman's compensation law as a comprehensive scheme to provide for efficient and expeditious remedies for injured employees. This scheme would be seriously undermined if employers were permitted to abuse their power to terminate by threatening to discharge employees for seeking compensation under the Act.
 Kelsay, 23 Ill.Dec. at 563, 384 N.E.2d at 357.
 
 
 [5]
 The Illinois Supreme Court in both Koehler v. Illinois Central Gulf Railroad Co., 109 Ill.2d 473, 94 Ill.Dec. 543, 488 N.E.2d 542, cert. denied, --- U.S. ----, 106 S.Ct. 3297, 92 L.Ed.2d 712 (1986), and Bartley v. University Asphalt Co., 111 Ill.2d 318, 95 Ill.Dec. 503, 489 N.E.2d 1367 (1986), recognized situations in which certain workers, despite the public policy of the State of Illinois, could not assert a retaliatory discharge claim. In Koehler, the court held that the Railway Labor Act, 45 U.S.C. Secs. 151-163 (1982), preempted the tort of retaliatory discharge. Accord Graf v. Elgin, Joliet & Eastern Railway Co., 790 F.2d 1341 (7th Cir.1986); Jackson v. Consolidated Rail Corp., 717 F.2d 1045 (7th Cir.1983), cert. denied, 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984). In Bartley, the Illinois Supreme Court once again limited the availability of the tort of retaliatory discharge. The court held that the plaintiff's state tort claim for civil conspiracy, which alleged that he was discharged in retaliation for cooperating with the Federal Bureau of Investigation, was inextricably intertwined with the terms of his labor contract, id. 95 Ill.Dec. at 509, 489 N.E.2d at 1373, and was, therefore, preempted, id. 95 Ill.Dec. at 509-10, 489 N.E.2d at 1373-74 (citing Vantine v. Elkhart Brass Mfg. Co., 762 F.2d 511 (7th Cir.1985) and Lingle v. Norge Division of Magic Chef, Inc., 618 F.Supp. 1448 (S.D.Ill.1985)). In Gonzalez, however, the court distinguished both Koehler and Bartley on factual grounds
 
 
 [6]
 Section 1441 provides in part:
 (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
 (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.
 28 U.S.C. Sec. 1441 (1986).
 
 
 [7]
 This is also the Supreme Court's approach. For instance, in Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the Court stated, in referring to Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), that:
 [In Avco ] the petitioner's action "arose under" Sec. 301, and thus could be removed to federal court, although the petitioner had undoubtedly pleaded an adequate claim for relief under the state law of contracts and had sought a remedy available only under state law. The necessary ground of decision was that the preemptive force of Sec. 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of Sec. 301. Avco stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.
 Id., 463 U.S. at 24, 103 S.Ct. at 2853-54 (footnote omitted) (emphasis in original); see also Caterpillar Inc., --- U.S. at ----, 107 S.Ct. at 2430 ("The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by Sec. 301 of the LMRA.").
 
 
 [8]
 This, of course, holds equally true for state statutes. See, e.g., Ill.Rev.Stat. ch. 48, p 138.4(h) (1985) (retaliatory discharge for filing a worker's compensation claim unlawful). Thus, neither a state legislature nor state courts may interfere with the federal labor law scheme
 In Gonzalez, the Illinois Supreme Court stated:
 It bears noting that even if the labor contract covering Gonzalez and Repyak recited the rights and obligations arising under the Workers' Compensation Act and expressly provided that a discharge in contravention of the Act was without "just cause," the claims would still fall entirely outside the preemptive sphere of section 301. Neither an employer nor a union can strip an employee of the protections of Illinois law by merely restating the rights and obligations that arise thereunder in a private labor agreement.
 Gonzalez, 104 Ill.Dec. at 756, 503 N.E.2d at 313. We reject this reasoning. The Supreme Court has stated that whether a state tort claim is "sufficiently independent of federal contract interpretation to avoid preemption is, of course, a question of federal law," Lueck, 105 S.Ct. at 1913; otherwise each state would be "free to decide what 'just cause' means or does not mean...." Gonzalez, 104 Ill.Dec. at 759, 503 N.E.2d at 316 (Ryan, J., dissenting).
 
 
 [9]
 Our view that the tort of retaliatory discharge is not a worker's compensation law is supported by the fact that, as a matter of federal law, worker's compensation laws provide limited no-fault compensation for an injury; this limit on damages is in exchange for the elimination of general tort rules and defenses. See Larson, Workmen's Compensation Sec. 1.10 (desk ed. 1986). The Illinois tort of retaliatory discharge lacks, for purposes of Sec. 1445(c), the essential elements of a worker's compensation law
 
 
 [10]
 "Section 301 confers original jurisdiction on the district courts over suits for violation of collective bargaining agreements negotiated by labor organizations and employers in industries affecting commerce." Mitchell, 772 F.2d at 344. For jurisdiction to be proper under Sec. 301(a), it is necessary that the suit be based upon an alleged breach of the collective bargaining agreement, and that the resolution of the plaintiff's suit be governed by the terms of that agreement. Williams, 786 F.2d at 935
 
 
 [11]
 The Supreme Court recently has explained, in adopting the reasoning of Avco to ERISA claims, the difference between the ordinary situation where federal preemption is a defense to a plaintiff's suit and the special role federal preemption plays under Sec. 301. Metropolitan Life Insurance Co. v. Taylor, --- U.S. ----, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)
 Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court.... One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years, this Court has singled out claims pre-empted by Sec. 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 185, for such special treatment.
 Metropolitan Life, 107 S.Ct. at 1546 (citations omitted); see also Caterpillar Inc. v. Williams, --- U.S. ----, ----, 107 S.Ct. 2425, 2428-31, 96 L.Ed.2d 318 (1987).
 
 
 [12]
 In Lueck, an employee was entitled to benefits under an insurance policy that was part of a collective bargaining agreement. The collective bargaining agreement provided that all disputes were subject to a grievance procedure which culminated in final and binding arbitration. The plaintiff alleged that his employer harassed him and then hindered his receipt of benefits for which he had applied. Instead of complying with the grievance procedures, Lueck filed suit in state court against his employer for bad-faith handling of his insurance claims. The trial court granted the defendant's motion for summary judgment, holding that the plaintiff had stated a claim under Sec. 301. The Wisconsin Court of Appeals affirmed. The Supreme Court of Wisconsin reversed, holding that the suit did not arise under Sec. 301 and was not preempted. The court reasoned that the plaintiff's claim was independent of the contract. The Supreme Court reversed, finding that the claim arose under Sec. 301. The Court also held that Sec. 301 preempted not only state contract claims, but also state tort claims
 
 
 [13]
 The Court stated that:
 Since nearly any alleged willful breach of contract can be restated as a tort claim for breach of a good-faith obligation under a contract, the arbitrator's role in every case could be bypassed easily if Sec. 301 is not understood to pre-empt such claims. Claims involving vacation or overtime pay, work assignment, unfair discharge--in short, the whole range of disputes traditionally resolved through arbitration--could be brought in the first instance in state court by a complaint in tort rather than in contract. A rule that permitted an individual to side-step available grievance procedures would cause arbitration to lose most of its effectiveness, Republic Steel Corp. v. Maddox, 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965), as well as eviscerate a central tenet of federal labor-contract law under Sec. 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.
 Lueck, 471 U.S. at 219-20, 105 S.Ct. at 1915-16 (emphasis added). The Court did, however, place limits on its holding.
 Clearly, Sec. 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the pre-emptive effect of Sec. 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.
 Id., 471 U.S. at 212, 105 S.Ct. at 1912 (footnote omitted).
 
 
 [14]
 One district court has referred to this statement as "impermissibly overbroad." La Buhn v. Bulkmatic Transport Co., 644 F.Supp. 942, 950 (N.D.Ill.), appeal docketed, No. 86-2664 (7th Cir.1986). We believe that Graf was decided correctly in light of Lueck, and that the statement quoted above is the law in this circuit
 It is true, as the district court in La Buhn noted, that the tort of retaliatory discharge is based on Illinois public policy. Moreover, Lueck made it clear that Sec. 301 does not allow the parties to contract for that which is illegal under state law. Lueck, 471 U.S. at 212, 105 S.Ct. at 1912. What the La Buhn court failed to understand is that where federal law provides a remedy (i.e., grievance procedures enforced through a collective bargaining agreement), and is meant to be exclusive, then overlapping or inconsistent state law must fall. We find this language in La Buhn to be inconsistent with both our previous decisions and with Lueck. The district courts in this circuit must, whether or not they agree with our reasoning or with the results we reach, follow our mandates.
 
 
 [15]
 At the time we decided Oglesby, the Indiana courts had not yet decided whether an employee under a collective bargaining agreement could sue for retaliatory discharge. However, our holding in Oglesby did not rest upon a prediction of how the Indiana courts would decide the issue
 
 
 [16]
 We have stated:
 Some cases do say that the Railway Labor Act occupies the field of labor relations in its domain even more completely than the National Labor Relations Act does in its, as shown by the fact that only the former Act requires that employment disputes be arbitrated. But when courts compare the preemptive scope of the two statutes in this way they have in mind the provisions of the NLRA that date back to the Wagner Act and create a regulatory scheme administered by the National Labor Relations Board; they are not referring to the entire NLRA, which includes amendments added by the Taft-Hartley Act in 1947 (and by later statutes), notably section 301 of the Taft-Hartley Act, 29 U.S.C. Sec. 185. Section 301, which is just as much a part of the edifice created by the (amended) National Labor Relations Act as the parts of the Act enforced by the Labor Board, creates an exclusive federal remedy, judicially rather than administratively enforceable, for breaches of collective bargaining contracts. Where, as is true of more than 90 percent of such contracts, the contract establishes a grievance and arbitration remedy, that remedy becomes by force of section 301 exclusive, just like the arbitral remedies established by the Railway Labor Act. See, e.g., Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). It is therefore hard to see why that Act should have more preemptive effect than the National Labor Relations Act.
 Lancaster v. Norfolk & Western Railway Co., 773 F.2d 807, 816-17 (7th Cir.1985) (citations omitted), cert. denied, --- U.S. ----, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987); see Leu v. Norfolk & Western Railway Co., at 830 ("While Allis-Chalmers is an LMRA case, its reasoning is equally applicable to the determination of whether a claim couched in terms of a state tort actually arises under an RLA collective bargaining agreement." (footnote omitted)).
 
 
 [17]
 We recognize that Sec. 301 does not preempt state anti-discrimination laws, even though a suit under these laws, like a suit alleging retaliatory discharge, requires a state court to determine whether just cause existed to justify the discharge. Section 301 does not preempt state anti-discrimination laws because Congress has expressly stated that state anti-discrimination remedies may exist within the framework of federal statutes that authorize multiple independent decisions. For example, Title VII and the ADEA speak with approval of the use of state remedies. See, e.g., 42 U.S.C. Secs. 2000(e)-5(c) & -7 (1982); 29 U.S.C. Sec. 633(a) & (b) (1982). In contrast, the LMRA gives no hint of approval or recognition of overlapping remedies for discharges. Therefore, Lueck is dispositive of this case, rather than analogies to statutes such as Title VII
 
 
 [18]
 See supra note 8
 
 
 [19]
 In Bale, the plaintiffs, who were hired as temporary employees, became concerned that no action had been taken recognizing them as regular employees. They filed a grievance with the union, but the union would not pursue it. They then filed suit in state court, alleging breach of oral contract, fraud, negligent misrepresentation, and a Sec. 301 claim for breach of the collective bargaining agreement. The case was removed to the district court, which found that the state claims were preempted. The court of appeals affirmed, holding that the plaintiffs' state claims were preempted
 
 
 [20]
 The district court in Martin found that the plaintiff attempted to "escape the exhaustion requirement by contending that exhaustion would be futile because she knew of no successful grievance and because she was advised by a Teamsters Local Union official that the Union would not process her employment grievance with full and adequate representation." Martin v. Carling National Breweries, Inc., No. 85 C 3321 (S.D.Ill. Apr. 11, 1986) (order granting defendants' motion for summary judgment)
 
 
 [21]
 At oral argument, counsel noted that Lingle's claim has been decided by an arbitrator. Lingle was permitted to pursue her claims under the collective bargaining agreement, because the district court concluded that her claim was really one under Sec. 301, requiring her to exhaust the grievance procedures
 
 
 [1]
 In Graf, this court stated: "Where the worker is covered by a collective bargaining contract and therefore has a potential federal remedy, judicial or arbitrable, the cases hold that that remedy is exclusive; the worker has no state remedies." Graf v. Elgin, J. & E. Ry. Co., 790 F.2d 1341, 1346 (7th Cir.1986)
 
 
 [2]
 Indeed, a claim for retaliatory discharge for having sought the protection of a state's workers' compensation scheme is a prime example of the situation alluded to by the Supreme Court in Allis-Chalmers that not "every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by Sec. 301." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985)
 
 
 [3]
 Compare Baldracchi v. Pratt & Whitney Aircraft Div., United Technologies Corp., 814 F.2d 102 (2d Cir.1987) (no preemption), Herring v. Prince Macaroni of New Jersey, Inc., 799 F.2d 120, 124 n. 2 (3d Cir.1986) (no preemption) and Peabody Galion v. Dollar, 666 F.2d 1309, 1316-19 (10th Cir.1981) (no preemption, pre-Allis-Chalmers ) with Johnson v. Hussmann Corp., 805 F.2d 795, 797 (8th Cir.1986) (preemption). As noted by the majority, the Ninth Circuit has not addressed the precise question of whether a cause of action for retaliatory discharge for filing a workers' compensation claim is preempted.4 See Gonzalez v. Prestress Eng'g Corp., 115 Ill.2d 1, 104 Ill.Dec. 751, 503 N.E.2d 308 (1986)
 
 
 [5]
 As indicated by the Second Circuit in Baldracchi, 814 F.2d at 106, a finding of no preemption in this case is supported by the Supreme Court's disposition of Pan Am. World Airways v. Puchert, 472 U.S. 1001, 105 S.Ct. 2693, 86 L.Ed.2d 710 (1985). In Puchert v. Agsalud, 67 Hawaii 225, 677 P.2d 449 (1984), the Supreme Court of Hawaii held that the Railway Labor Act (RLA), 45 U.S.C. Sec. 151 et seq., did not preempt a state statute prohibiting discharge in retaliation for filing a workers' compensation claim. 677 P.2d at 454-56. The United States Supreme Court dismissed the appeal for want of a substantial federal question. As stated by the Second Circuit, "[i]f the Hawaii law were preempted by the RLA, the case would necessarily have presented the Court with a substantial federal question." 814 F.2d at 106